BELLE FRANCIS SCOTT, Appellee, v. MAX FEILSCHMIDT et al., Appellants.

**ARREST:** Conduct Provoked by Officer. An arrest is unlawful when the arresting officer has no warrant, when no offense has been committed, and when the cause for arrest was provoked by the impertinent conduct of the officer himself.

**PRINCIPAL AND SURETY:** Action on Bond—Burden of Proof. In an action for false arrest, and on the arresting officer's bond, conditioned "without fear, favor, fraud, or oppression to discharge all the duties *** required of his office by law and the ordinance of the said city," the burden of proof rests on the surety to show that no law or ordinance required such a bond.

*Appeal from Woodbury District Court.*—JOHN W. ANDERSON, Judge.

APRIL 6, 1921.

ACTION to recover damages against defendant Feilschmidt, and against the surety on his bond, for the wrongful arrest of plaintiff. Verdict and judgment in favor of plaintiff. Defendants appeal.—*Affirmed.*

*John R. Carter,* for appellants.

*Jepson, Struble & Anderson* and *George G. Yeaman,* for appellee.

ARTHUR, J.—Plaintiff was a minor, under the age of 18 years, and a resident of Sioux City. Defendant Feilschmidt was an officer on the police force of Sioux City. Defendant United States Fidelity & Guaranty Company, a corporation engaged in the bonding business, was surety on Feilschmidt's bond. Feilschmidt, while acting as such police officer, without process of court, arrested plaintiff and detained her in his personal custody for a period of about an hour, on the streets of Sioux City, before a large crowd of men. At the time of the arrest, plaintiff was conducting herself as an orderly person, and not committing any breach of the peace or violation of law, nor had she in any manner violated any of the laws of the state of Iowa or ordinances of the city of Sioux City.

1. ARREST: conduct provoked by officer.

There is no dispute in the facts, except some difference in the testimony of plaintiff and defendant Feilschmidt as to what occurred and the conversation held between plaintiff and Feilschmidt while plaintiff was in the custody of Feilschmidt.

Code Section 5196 provides:

"A peace officer may make an arrest in obedience to a warrant delivered to him; and without a warrant:

"1.  For a public offense committed or attempted in his presence;

"2.  Where a public offense has in fact been committed, and he has reasonable ground for believing that the person to be arrested has committed it."

It is conceded that Feilschmidt was a police officer. Under Code Section 5099, he was a civil or public officer authorized to make arrests, under conditions warranting him so to do. The trial court held, in submitting the case to the jury, under the undisputed testimony, that, at the time Feilschmidt arrested plaintiff, plaintiff had not committed a public offense, or attempted to commit a public offense in the presence of Feilschmidt, and that Feilschmidt had no reasonable ground for believing that plaintiff had committed a public offense. Complaint is made of such holding and instruction, and that the court refused to submit to the jury the question of whether plaintiff, by her acts and by what she said to Feilschmidt, had committed a public offense after Feilschmidt had taken her into

his custody, and whether or not Feilschmidt was justified in making the arrest.

The record does not bear out the claim of appellants. We have carefully examined the testimony of Miss Scott and of Feilschmidt, the only testimony bearing on that point, as to what occurred and what was said by each of them while plaintiff was in the custody of Feilschmidt. It appears from the testimony of Feilschmidt that he accosted the girl while she was talking to someone else at a hotel news stand, and asked her what she was doing now, to which she replied, "None of your business;" that she said to him finally, "You are full of prunes, you bastard;" that she thereupon walked out of the hotel, and he followed her, and did catch up with her, and asked her why she had used that language to him, and she then said to him, "Go away, I will slap you in the face," to which he replied, "No, you won't, I didn't give you any offense;" and that she then, as he described it, "hauled off and slapped me, and I then grasped her hand;" that Feilschmidt then showed his star and arrested her and took her to the city building, but did not take her to a magistrate or file any information against her.

Concerning the news stand incident, Miss Scott testified that she went there to get an evening paper, and was talking to the newsboy, and Feilschmidt stepped up and touched her on the waist, and said, "I know you; you know me."

"I looked at him and said, 'No, I don't know you.' He said, 'Oh yes, you know me all right.' I said: 'No, if you will tell me where I met you or saw you, maybe I can remember; but I don't know; I never seen you before.' Then he said, 'Why, I got you a job with the Johnson Biscuit Company,' and I said, 'No.' Then it dawned on me who he was; he was the fellow that I was afraid of. I remembered then that, when I first came to Sioux City, I went to the Martin Hotel, and saw Feilschmidt when I was eating my breakfast. As I was leaving, he said, 'Wait a minute.' I did not wait for him, and afterwards he overtook me on the street and asked me where I was going, and I didn't answer him. He asked me where I was going again, and I said I was going to the Johnson Biscuit Company, and asked him if he knew where it was—I was going there to get work. He said he didn't have anything to do for a couple of hours, and took

me down the street and showed me the place. We had conversation on the way. He said to me then, 'I have a room.' He said he would introduce me to the superintendent of the Johnson Biscuit Company. I said, 'No, you couldn't recommend me, you are a stranger, and couldn't very well recommend me;' and I started to leave him, and he said: 'Listen, I have got a room at the hotel. You call me up at 4 o'clock and come over.' I made no reply. I was afraid of him, and left him. I didn't see Feilschmidt until this affair took place. Well, then he says, 'Where are you working?' I didn't want him to know where I was working, and I didn't want him to know my name, and this made him kind of sore. I was embarrassed at his talking to me, and I said to him, 'You big prune,' and walked out, and thought he would not follow me. I didn't see Mr. Feilschmidt until I got as far as Frank's restaurant. Just as I got there, he grabbed me by the arm and said, 'I am going to arrest you,' and he said: 'I am going to take you to the police station and have you examined. I won't have you call me a prune.' I said, 'What have I done?' and he said, 'You won't call me a big prune.' He then jerked me across the street. I was crying then, and he wouldn't let loose of my arm; he was holding it real tight; and from one side of the street he jerked me to the other; and I said, 'If you will let loose of my arm, I will talk with you,—I can't walk when you are doing this.' I am lame, and with such force I couldn't stand up on my feet when he jerked me. He took me up as far as the New York Bakery, and I told him to let loose of my arm. There he said to me, 'If you don't come with me, how would you like a ride in the police patrol?' I said, 'If you will call my uncle, I can prove myself;' and he said, 'You have plenty of time to get your uncle.' At that point, there was a fellow and girl passing, and the girl said, 'Oh, look there,' and the fellow said, 'Don't pay any attention, he is just taking her in.' After that, I said to him, 'Well, what have I done?' He said, 'You are not going to call me a big prune, all the way up the street.' He had been calling me a prostitute, and saying these things to me over and over again. He was talking in a loud voice. Then he took me up the stairs into the city hall building. He walked to a door and tried to open it, and it was locked, and he said, 'Mr. Mann

is not there.' I said: 'Well, take me to this place, wherever you are going to take me. I want to get my uncle.' Then he said to me, 'You little prostitute—soliciting around hotels.' Then he asked me my name, for the first time. He did not ask me where I lived, or who my father and mother were. I told him I had nobody but my uncle; said I was working, and had nothing to hold my reputation up but him, and he wouldn't get him for me. When we went out of the city building, there was quite a crowd gathered, and Feilschmidt told them I was soliciting around hotels. He told me to go home, and in parting, he said, 'I will take you yet.' I had never been arrested before. I had done nothing in the hotel when he took me into custody, nor in any hotel, nor had I talked in a loud or boisterous voice. Feilschmidt did not accuse me of anything only calling him a prune. He didn't tell me what he arrested me for. There was never any charge filed against me by Feilschmidt or anyone else. I had not, at any time, been guilty of any offense for which I could have been arrested.''

Feilschmidt was asked this question:

''Had she done anything else; had she had any trouble with anybody else for which you arrested her? A. Not to my knowledge. Q. You arrested her for what she said and did to you? A. Why, yes.''

The uncontradicted testimony shows that this girl had committed no offense; that Feilschmidt arrested this girl for what she said and did to him.

A peace officer cannot legally make an arrest without a warrant for an offense claimed to have been committed in his presence which he himself provokes or brings about. *State v. Small*, 184 Iowa 882; *Leighton v. Getchell*, (Iowa) 169 N. W. 649 (not officially reported). In *Leighton v. Getchell*, supra, in dealing with the arrest of a woman by an officer for refusing to give her name and address, we said:

''That the plaintiff had done nothing that justified her arrest, this record makes plain. That the officers were not justified in arresting her is equally plain. The jury is asked to say that sworn officers, charged with the honest and fair enforcement of the law, arrested this woman simply because she refused to give her name to them when requested. If we could

believe this, or if we thought that the jury could believe this, then we think it is time that these officers should be publicly admonished that the citizen has some rights which the officer is bound to respect; that the showing of a badge, even though worn by a police officer, does not justify the conduct here complained of; and that refusal to give one's name and address does not justify the incarceration of a citizen.''

It was not error to refuse to submit to the jury the issue as to whether the policeman was justified in making the arrest of plaintiff because of an offense committed in his presence, consisting of what occurred between him and the plaintiff.

There is criticism of the instructions, but no particular exceptions were taken. However, the case being of importance, we have examined the instructions carefully. The instructions embody the law of the case, and are free from error.

The predominant questions are presented by defendants' objection to the introduction in evidence of the bond sued on, and the same question raised on motions to direct verdict, and to instructions embodying that question, and to motions for a new trial, and are: That the bond sued on is not a bond given in pursuance of any statute of the state nor of any ordinance of the city of Sioux City; that no privity of contract existed between plaintiff and the defendant Bond Company; and further, that it was incumbent upon the plaintiff to plead and prove that, under the statute of the state and under the ordinance of Sioux City, such a bond as defendant Feilschmidt gave was required to be given. Such contention on the part of defendant is without merit. ·One suffering damage at the hands of one required to give bond, by reason of the breach of the bond, may bring action on the bond, regardless of who is named obligee therein. *Strunk v. Ocheltree,* 11 Iowa 158; *Charles v. Haskins,* 11 Iowa 329; *Clancy v. Kenworthy,* 74 Iowa 740.

2. Principal and surety: action on bond: burden of proof.

An illegal arrest is a breach of a bond conditioned to "faithfully and without oppression discharge all duties required by law." *Yount v. Carney,* 91 Iowa 559; *Clancy v. Kenworthy,* 74 Iowa 740.

Counsel for appellants strenuously urges that the burden was on the plaintiff to plead and prove that the bond sued on

was one required especially by an ordinance of the city of Sioux
City. Defendants asserted this position in their answer. The
bond was given by the officer, and contained provisions covering
liability for injury and consequent damage, such as sought to be
recovered in this case, the provision being:

"Without fear, favor, fraud, or oppression, discharge all
the duties now or hereafter required of his office by law and the
ordinances of the said city."

The burden was on the appellants to show that the bond was
not given in pursuance of an ordinance, if such was the fact.
Defendants made no such showing. On the other hand, their
own witness, Mann, who was superintendent of public safety
in Sioux City, testified that Feilschmidt was employed as police-
man, filed the oath of office, and gave the bond required of all
policemen. The record affords no justification of the policeman
in arresting this girl. She had committed no offense. She talked
saucily to Feilschmidt. She called Feilschmidt a "big prune,"
and addressed to him some other remarks. But at no time, be-
fore or after arrest, did she do anything to justify her arrest.
Feilschmidt's conduct in following the girl and taking her into
his custody and saying the things to her that are disclosed by
the record is very reprehensible, to put it mildly. This girl was
attending to her own business, and molesting no one. There was
no lawful occasion for this policeman to take her into custody.
The record speaks loudly that the policeman followed this girl
out of the hotel onto the street and pursued her, not for the
purpose of performing any service as an officer, but for the pur-
pose of gratifying his own personal and wicked desires.

We find no error in the trial of the case nor in the submis-
sion of the case. The judgment of the trial court is—*Affirmed.*

EVANS, C. J., STEVENS and FAVILLE, JJ., concur.