THE PEOPLE OF THE STATE OF NEW YORK ex rel. MARY CONLEY, Petitioner, *v.* GLENN A. FRANK, Respondent.

Rhodes, Crapser and Bliss, JJ., concur; Heffernan, J., dissents with an opinion, in which Hill, P. J., concurs.

HEFFERNAN, J. (dissenting). I dissent from the view of the majority in this case.

So far as the parties themselves are concerned, this case is only of trifling importance. It involves, however, a principle of grave concern to all.

One Myer, a police officer of Albany, laid the following information before the police magistrate of that city, in which information it is attempted to charge relator with disorderly conduct in violation of subdivision 1 of section 722 of the Penal Law:

"POLICE COURT,
CITY AND COUNTY OF ALBANY. } *ss.:*

" Frank E. Myer, being duly sworn, deposes and says: That he is a policeman in the City of Albany; that Mary Conley at the City of Albany in the county of

Albany, aforesaid, on the 17th day of June, 1934, did feloniously, wrongfully, unjustly, unlawfully, wickedly, wilfully, maliciously, and knowingly violate subdivision 1 of Section 722 of the Penal Law, of the State of New York, in that she did commit acts whereby a breach of the peace might be occasioned; that while on New Scotland Ave., at about 11:10 o'clock P. M., the defendant did use offensive, abusive and insulting language, conduct and behaviour; that she did shout in a loud voice ' go on now and mind your own god dam business you can't talk to me, the last time your fellows took me in you broke two of my ribs and I will not go with you this time.'

"FRANK E. MYER.

" Taken, subscribed and sworn
to before me this 18th day of
June, 1934.

"GEORGE B. FRANK,
"*Clerk of the Police Court.*"

Relator was apprehended for the alleged offense. Contending that the information is insufficient to charge a crime, she sought her release on a writ of habeas corpus. The Special Term dismissed the writ and remanded her to the custody of respondent. The order of dismissal is the subject of review.

The pertinent provisions of the statute, pursuant to which the information was filed, are: "Any person who with intent to provoke a breach of the peace, or whereby a breach of the peace may be occasioned, commits any of the following acts shall be deemed to have committed the offense of disorderly conduct:

" 1. Uses offensive, disorderly, threatening, abusive or insulting language, conduct or behavior."

The term " breach of the peace " signifies the offense of disturbing the public peace or tranquillity enjoyed by the citizens of a community; a disturbance of the public tranquillity by any act or conduct inciting to violence or tending to provoke or excite others to breach the peace; a disturbance of public order by an act of violence, or by an act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community. (9 C. J. 386, 387.)

Actual or threatened violence is an essential element of a breach of the peace. (*State* v. *Steger*, 94 W. Va. 576; *State* v. *Warner*, 34 Conn. 276; *Ware* v. *Loveridge*, 75 Mich. 488.)

The information does not charge any offense. Certainly it does not charge a breach of the peace. It merely alleges that relator committed " acts whereby a breach of the peace *might be occasioned*." What these acts are is left to surmise and conjecture. Some of the quoted words in the information are profane. There is no allegation in the complaint or any claim made that any other person, except the one to whom they were addressed, heard the statement. It is not contended that a crowd collected or that a single act occurred which would indicate disorder or violence. There is no statement that the public tranquillity was disturbed in the slightest degree.

While it is true that an information need not charge a crime with the fullness and particularity required in an indictment and while technical accuracy is not necessary in order to authorize a magistrate to act, the information must still state the essentials of the offense intended to be charged together with such facts and circumstances as will enable a person of average intelligence to understand the

nature of the charge made against him. Every charge of crime should be made in direct, concise and positive terms. All the material facts constituting the offense must be stated. No essential element of the crime can be omitted. I concede that the strictness formerly required in criminal proceedings has been relaxed but the requirement that the information must set forth every essential element of the crime still remains. Essential elements of the offense may not be left to inference, speculation or conjecture. In the case under consideration relator is charged with an act which may or may not be an offense. Hence the facts or circumstances which render the act criminal must be set forth. The complaint makes no such specification. It is to be noted also that the information charged that relator " feloniously " violated the section in question. Certainly the use of that word cannot be defended.

It is too well settled for either disputation or discussion that the use of profane language in a loud and boisterous tone of voice in a public place and in the presence and hearing of others constitutes disorderly conduct. In 2 American and English Encyclopædia of Law, page 424, note 2, it is said: " Public swearing is a nuisance at common law but, to be indictable it must be in a public place and an annoyance to the public." There are many authorities cited to sustain the statement in the text. It is the publicity of the offense and the place in which it is committed that make it punishable as a common nuisance. There can be no publicity unless the profane language is uttered in the presence and within the hearing of others and this is an essential and an indispensable fact which must necessarily be charged in the information in order to make out a successful allegation of any offense. The use of profane and vulgar language does not *per se* constitute an offense, but only when so publicly indulged in as to disturb the peace and good order of society.

Is it a crime to utter a profane remark in the presence of a policeman when no one else is present to hear the utterance? Is a citizen called upon to stand uncovered and genuflect in the presence of such an official? It has been held again and again that opprobrious and profane words addressed to a policeman and not heard by others do not constitute an offense against the peace. (*Village of Salem* v. *Coffey*, 113 Mo. App. 675; *State* v. *Moore*, 166 N. C. 371; *Williams* v. *State*, 21 Tex. App. 256; *People* v. *Lukowsky*, 94 Misc. 500.) Mere impudence or back talk to a policeman does not justify an arrest by such officer for breach of the peace. (*Jenkins* v. *State*, 3 Ga. App. 146; *Scott* v. *Feilschmidt*, 191 Iowa, 347; *Pinkerton* v. *Verberg*, 78 Mich. 573.)

It is not the law that every insulting word, gesture or motion even towards a policeman amounts to disorderly conduct. It may be of such a character or so provoked or conditioned as to be fully justified. (*City of Jacksonville* v. *Headen*, 48 Ill. App. 60; *Heath* v. *Hagan*, 135 Iowa, 495; *State* v. *Small*, 184 id. 882.)

The information in the instant case carefully avoids any mention of the language which Myer employed to relator which elicited the reply which he received. Even a judge must be utterly lacking in imagination who cannot visualize what occurred. The vocabulary of the average policeman is not lacking in a choice collection of offensive epithets.

To uphold the legality of the charge in question would place every citizen at the mercy of a policeman. That official, under color of authority, would have it in his power to reap private vengeance. Actuated by malice it would only be necessary for him to make an insulting remark to a citizen and if the latter resented

by word or act the officer would then drag him to jail for a breach of the peace. I am utterly opposed to any such doctrine. The complaint fails to show that relator was guilty of disorderly conduct. (*People* v. *Perry*, 265 N. Y. 362; *People* v. *McCauliff*, 267 id. 581.)

The order should be reversed, the writ sustained and the relator discharged from custody.

Hill, P. J., concurs.