The People of the State of New York, Plaintiff, *v.* Charles Barisi et al., Defendants.

City Magistrate's Court of New York, Borough of Manhattan, Lower Manhattan. Arrest Part, December 17, 1948.

*Samuel M. Sacher* and *Charles A. Schneider* for defendants.

*Bernard Sobol* for Joseph P. Murphy, complainant.

Andrews, M. The defendants were arrested on October 4, 1948, and charged with disorderly conduct in violation of subdivision 2 of section 722 of the Penal Law. The gravamen of the offense was that the defendants illegally picketed within the Pennsylvania Station, and refused to discontinue doing so when directed by the complainant, a New York State railroad policeman.

After the completion of testimony on October 14, 1948, decision was reserved, and briefs were requested as to whether the Pennsylvania Railroad is a public place and also whether the picketing in the railroad terminal, per se, constituted disorderly conduct.

The picketing was not against the Pennsylvania Railroad, but against a lessee of space in the station, the Union News Company, located in the " well " of the station between the main information booth and the entrance to the train concourse.

On the advice of their business agent and their lawyer, the defendants walked on imaginary lines that would be a continuation of the north and south sidewalks of 32d Street. There were two pickets on each imaginary line, the pickets on the southern imaginary line being in close proximity to the " stand " of the Union News Company.

The testimony evidenced no acts by the defendants which would have justified their arrest if the picketing had taken place on a public thoroughfare, other than a slight interference with persons going to and from trains, but no more than is encountered by the average person in that busy station. Each picket faced the other on his imaginary line, turned and walked a short distance with placards, returned to the starting points and continued similarly to picket for about twenty minutes.

Sufficient proof was adduced at the trial to conclude that the Pennsylvania Railroad is the owner of the property picketed by the defendants — hence, private property. Yet is it a private place? I do not think it is. The railroad charges no fee merely to enter its domain, nor could its employees refuse to permit any person to enter the station, whether he had business therein or not, provided his conduct was orderly. As was stated in *Marsh* v. *Alabama* (326 U. S. 501, 506), " Ownership does not always mean absolute dominion. The more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it. * * * Thus, the owners of privately held bridges, ferries, turnpikes and railroads may not operate them as freely as a farmer does his farm." The highest court in the land further said: " When we balance the constitutional rights of owners of property against those of the people to enjoy freedom of press and religion * * * we remain mindful of the fact that the latter occupy a preferred position."

It is a matter of common knowledge that the Pennsylvania Railroad Station at 31st to 33rd Streets, between 7th and 8th Avenues, is not conducted solely for railroad purposes. In the station many stores are located where anything from a hamburger to a dress suit and silk hat may be purchased. Hence, by thus becoming realtors, by opening up their property to the general public, the owners of the station have made it a quasi-public place, and as such their ownership is " circumscribed by the constitutional rights of those who use it." The right to picket and publicize a labor dispute is a protected constitutional right of free speech. As was stated in *Thornhill* v. *Alabama*

(310 U. S. 88, 102), " In the circumstances of our times the dissemination of information concerning the facts of a labor dispute must be regarded as within that area of free discussion that is guaranteed by the Constitution."

Two cases somewhat similar to the one at bar are *People* v. *Swald* (190 Misc. 239, 241) and *People* v. *Goldstein* (150 Misc. 101). In the *Swald* case (*supra*), the defendant was charged with a violation of section 722 of the Penal Law in that he solicited taxicab fares on the property of the New York Central Railroad, over the objection of the railroad. The testimony there was that the defendant was quiet and orderly, as in the case of the defendants herein. In dismissing the complaint the court said (p. 241), " The term ' breach of the peace ' was a term well known to the common law. It signified the disturbance of the public peace and tranquility by any act or conduct  *  *  * tending to provoke or incite others to breach the peace." (See *People* v. *Frank*, 245 App. Div. 777, 778; *People* v. *Most*, 171 N. Y. 423, 429).

In the *Goldstein* case (*supra*), the Court of Special Sessions, in unanimously reversing the conviction of the defendant who was charged with disorderly conduct, in that he sold newspapers in the city subways (which were then privately owned), said:

" The question, however, before us is: Does the orderly selling of papers on a subway train constitute disorderly conduct as defined in subdivision 2 of section 722 of the Penal Law, which reads as follows:

" ' § 722. Disorderly conduct.  *  *  *

" ' 2. Acts in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others.'

" *  *  * There is no evidence in this case of any other acts or conduct on the part of the appellant that tended to annoy, disturb, interfere with, obstruct, or be offensive to others, nor do any of the acts proven tend to a breach of the peace. The judgment must, therefore, be reversed on the law, facts examined, and, no errors found therein, complaint dismissed."

Since the picketing was not against the Pennsylvania Railroad but against a lessee thereof, and inasmuch as the defendants were quiet and orderly; and, furthermore, because of the small number of pickets involved on the premises, I am granting the motion made by counsel for the defendants to dismiss the complaints herein. Therefore, the complaints herein are dismissed and the defendants are discharged.

The court wishes at this time to express its deep appreciation to counsel on both sides for the excellent and exhaustive brief each submitted.