228 P.2d 952

### STATE v. ALLS.

No. 5334.

Supreme Court of New Mexico.

March 12, 1951.

James L. Briscoe, Tucumcari, for appellant.

Joe L. Martinez, Atty. Gen., Hilario Rubio, Asst. Atty. Gen., for appellee.

COORS, Justice.

The defendant was charged with involuntary manslaughter, tried and found guilty as charged, by the verdict of a jury, and was accordingly sentenced by the court.

On Christmas eve, December 24, 1949, J. A. Carr and his wife with two of their small children left Tucumcari about 4:00 P.M. in a G.M.C. 1950 half-ton truck being driven by Mr. Carr on U. S. Highway 66 toward their home several miles east of Tucumcari. Just a short distance east of the city limits, while driving in an easterly direction at a speed of 40 to 50 miles per hour, Mr. Carr felt a jar to his pick up truck which threw it out of his control. The pick up truck skidded to the right at the time of the jar, as indicated by tire skid marks on the paved road, and rolled down the road a ways and left it 82 feet from the start of the skid marks, continued to go further through the bar pit on the right side of the road and through a pasture fence, turned over completely, and came to a stop 70 feet from the highway up-right on its wheels. Mrs. Carr was thrown out of the pick up truck, injured and died almost immediately. Mr. Carr and the two children were not thrown from the truck but remained in it until it came to a stop. The jar of the truck and its subsequent skidding were caused by the defendant who was driving his automobile on the same road in the same direction as Mr. Carr was traveling, but behind him.

The defendant just before the collision had passed another car and an oil truck, and was driving his car at the time at a speed of about 60 miles per hour. The defendant, without any warning, at a high rate of speed, approaching Mr. Carr's pick up from the rear, ran the right front end of his car into the left rear end of Mr. Carr's pick up truck, thus causing the jar to the pick up truck and the skidding to the right, as shown by the tire marks on the highway, and causing the chain of events that followed, consisting of Mr. Carr's being thrown out of control of his pick up, it running off the road, turning completely over, and the injury and death of Mrs. Carr. At the time of the collision Johnny Hill was riding in the car with defendant but Hill was not called as a witness at the trial.

The defendant was tried upon the theory that Mrs. Carr was unlawfully killed, unintentionally and without malice, by defendant in the commission of an unlawful act, not amounting to a felony, but amount-

ing to a misdemeanor, and that such unlawful act consisted of driving an automobile upon a public highway within this state while under the influence of intoxicating liquor, and that such driving under the conditions named, and particularly the bumping at that time of the pick up truck of Mr. Carr by defendant's automobile was the proximate cause of Mrs. Carr's death.

The fact that defendant was intoxicated and drunk when he was driving his 1947 Kaiser automobile at the time he crashed into Mr. Carr's pick up was abundantly supported by substantial evidence and was not denied but practically admitted by defendant when he testified at his trial. Defendant testified to taking four drinks of intoxicating liquor on the day of, but before, the accident, and that he might have taken several more. He admitted there was a possibility he was staggering as he went to his car just before he drove out where the accident occurred. Several witnesses testified defendant was drunk and they were not strangers but people who were his friends or acquaintances. Tucumcari City Policeman De Olivera testified he had seen and talked to defendant in Tucumcari about one o'clock P.M., just three or three and one-half hours before the fatal accident, and that defendant was drunk then, and that he saw him at the scene of the accident, a few minutes after it occurred, and that defendant was still drunk, but more so.

Police Desk Sergeant Tatum, City Policeman Wier, and State Policeman Brunk all saw him at the scene of the accident a few minutes after it happened and testified that he was drunk. These same witnesses testified as to his manner of talking and walking, his lack of equilibrium, the odor of alcohol, etc., at the scene of the accident. Dr. Gordon, a practicing physician called to the sheriff's office to examine defendant one hour after the accident, testified he was drunk but had no physical injuries that he noticed. With all this evidence the jury were justified in finding the defendant not only under the influence of intoxicating liquor, but thoroughly under its influence, in fact, drunk.

All the evidence in the case shows, and the defendant admits, he was driving his car on the public highway at the time, and that he bumped Mr. Carr's pick up truck on the rear end by driving the front end of his car into the rear end of Mr. Carr's pick up truck while the pick up was traveling east on the road in the same direction as defendant was traveling, and that thereafter Mr. Carr's pick up left the road, traveled across the bar pit on the south, over a fence, turned over throwing Mrs. Carr out and killing her, and landed again right side up on its wheels. The evidence indicated that when defendant's right front fender hit the rear spring of Mr. Carr's pick up, that the spring punched a hole in defendant's right front fender.

Counsel for defendant in his brief says: "No material facts in the case are in dispute. It is the application of the law to the admitted facts that brings the defendant to ask the consideration of this Court."

While counsel for defendant sets forth ten separate assignments of error, his brief and argument are practically confined to three points. His first point: That there was no substantial evidence to warrant a jury in finding that the acts or conduct of the defendant constituted the proximate cause of the accident resulting in the death of Mrs. Carr; and his second point: That something else of some kind must have occurred or intervened after defendant's car struck Mr. Carr's pick up that actually caused the pick up to leave the road, go across the bar pit, turn over and kill Mrs. Carr, because defendant contends the evidence showed the defendant's drunken driving and bumping into Mr. Carr's pick up could not have caused the accident and death.

The first and second points made by defendant are so closely related that we shall dispose of them together. After all, they reduce themselves to the single consideration whether there is substantial evidence to support the verdict. The charge against defendant was the unlawful killing of Mrs. J. A. Carr. The state's evidence consisted of facts recited hereinabove establishing defendant's intoxication beyond all question, the driving of his car on the highway while in that condition and that the collision of his car with the rear of the one in which decedent was riding resulted not only proximately, but directly, from defendant's condition, thereby fixing as the proximate cause of her death his violation of 1941 Comp. § 68–502, prohibiting the driving on the highways of this state of any vehicle while under the influence of intoxicating liquor. The trial court correctly instructed the jury if it should so find, then the defendant would be guilty of the offense charged. State v. Sisneros, 42 N.M. 500, 82 P.2d 274.

There is no evidence of any kind that Mr. Carr at the time of the collision or thereafter was guilty of any negligence whatsoever, and neither was there a scintilla of evidence that the 1950 G.M.C. truck being driven by Mr. Carr at the time had any mechanical defects or impairments whatsoever affecting its proper operation or control in any manner. Neither was there any evidence of any other intervening cause which might have been labeled a proximate cause concurring with another to cause the accident and death. The drunken driving in such manner by defendant was the proximate cause of the accident disclosed by the evidence. The jury would have had to go outside of the evidence and the reasonable inferences therefrom to have reached any other conclusion. Any other finding by the jury would have been made, not from the

evidence but from wandering out into the realm of speculation, imagination or hallucination, which the law does not permit and the court certainly should not encourage by its instructions to the jury.

Counsel for defendant contends that the drunken driving of defendant in running into the rear end of Mr. Carr's pick up could not possibly be the proximate cause of Mrs. Carr's death because some intervening cause had to happen for the reason that Mr. Carr's pick up ran 82 feet down the paved highway before going off the road into the bar pit, and from the place it left the paved highway it traveled and turned over a further distance of 82 to 182 feet, making a total of somewhere between 164 feet and 264 feet from the place of impact to the place it finally stopped. The reasoning of defendant's counsel in this regard is difficult to follow. All the evidence was that at the time of the bump or crash Mr. Carr's truck was traveling 40 to 50 miles an hour. Defendant's hitting it from behind with a car going at a higher rate of speed in the same direction should have no tendency to stop or slow Mr. Carr's truck. Using a little arithmetic we find that Mr. Carr's truck going at 50 miles per hour would travel the 82 feet where it ran off the road in $1\frac{1}{8}$ seconds after the impact, and in $1\frac{1}{2}$ seconds if Mr. Carr's speed was only 40 miles per hour. After leaving the road the pick up continued another 82 or 182 feet before coming to a stop, but this would take only 3 or 4 seconds. By examining the accident from a standpoint of time it is seen that the effect followed the cause immediately. Can it be said with any logic or reason that the collision under the circumstances related would have knocked the pick up truck off the road instantly without allowing it to continue down the road as it was traveling for 1 or $1\frac{1}{2}$ seconds? The question needs no answer. It is obvious.

Defendant's counsel cites and relies on the case of State v. Nichols, 34 N.M. 639, 288 P. 407, 408 as authority in support of his contention. The facts in the Nichols case are so different from the present case that it lends no support to defendant here. In the Nichols case it is stated: "the revolver had to be discharged in some manner; but appellant did not discharge the revolver, as charged; it in some way worked out of his pocket, fell, and struck the floor and was discharged; the proximate cause of the homicide was the discharge of the weapon, not the unlawful carrying of same." The facts show Nichols was attending a dance and dancing when the pistol fell and struck the floor. In the instant case Defendant Alls was personally driving his automobile on the highway in an intoxicated condition and at that very time drove it himself, at a high rate of speed, with force and violence, into the rear of Mr. Carr's pick up with the fatal accident resulting. In the Nichols case there

was no evidence that Nichols discharged the revolver or that any act of his was the proximate cause of the injury and death, but in the present case defendant's acts were clearly shown to have been the proximate cause.

■ Defendant's counsel also cites State v. Sisneros, supra, but we fail to see that the decision in that case can be helpful to defendant's contention. Sisneros was charged with involuntary manslaughter on two counts; the first count charging him with the unlawful killing while wilfully driving a motor vehicle in a careless, reckless and wanton disregard of the safety of others, that is, criminal negligence; and the second count charged him with killing in the commission of an unlawful act not amounting to a felony, that is, driving under the influence of intoxicating liquor. The opinion in the Sisneros case discusses at some length the two types or kinds of involuntary manslaughter and also the effects of intoxicating liquor upon a driver, and of course holds that when the commission of an unlawful act not amounting to a felony is the ground of the charge, such as driving while under the influence of intoxicating liquor, the State must prove the unlawful act was the proximate cause of the death. The opinion, however, holds there was no substantial evidence in the trial to warrant any finding that Sisneros was under the influence of intoxicating liquor, and further that there was no sub-

stantial evidence to support the count charging the defendant with recklessness and wanton disregard of the safety of others, that is, criminal negligence. In the instant case, however, there is ample and substantial evidence to support the verdict.

■ In the Sisneros case this Court announced: "It is the rule of the Texas Court of Criminal Appeals, as it is of this court, that it will not review the testimony except to determine if the verdict and judgment are supported by substantial evidence. [42 N.M. 500, 82 P.2d 278.]" See also State v. Martinez, 53 N.M. 432, 210 P.2d 620.

The third point made by counsel for defendant is this: That defendant could not be convicted unless it is proven that Mrs. Carr's death was the natural consequence of the action of defendant while driving under the influence of intoxicating liquor, and that such consequences might have been reasonably foreseen by the defendant at and prior to the time of the collision.

■ It is well known that an intoxicated person discards those traits which he might possess when sober, such as reasonableness, caution, carefulness, prudence, diligence and foresight. He loses such traits in proportion as he becomes more under the influence of intoxicating liquor. Can we say that a drunken man driving his car on a public highway cannot legally be found guilty of manslaughter because his very voluntary drunkenness has so changed him

or affected him that he is unable to reason and foresee what the result of his illegal acts might be? This third point of law raised by defendant apparently has never been considered and passed upon by this Court in previous opinions. The question has been rather thoroughly discussed and decided by the Supreme Courts of Michigan and Tennessee, which opinions and decisions we approve and quote at some length.

In People v. Townsend, 214 Mich. 267, 183 N.W. 177, 179, 16 A.L.R. 902, it is said:

"Counsel is in error in assuming that the act of defendant in operating his automobile upon a public highway while intoxicated was an act merely malum prohibitum and not malum in se. It is true the statute forbids it and provides a penalty, but this in no way determines whether it is only malum prohibitum. The purpose of the statute is to prevent accidents and preserve persons from injury, and the reason for it is that an intoxicated person has so befuddled and deranged and obscured his faculties of perception, judgment, and recognition of obligation toward his fellows as to be a menace in guiding an instrumentality so speedy and high-powered as a modern automobile. Such a man is barred from the highway because he has committed the wrong of getting drunk and thereby has rendered himself unfit and unsafe to propel and guide a vehicle capable of the speed of an express train and requiring its operator to be in possession of his faculties.

"Voluntary intoxication is an offense not only malum prohibitum but malum in se * * *.

"Voluntary drunkenness in a public place was always a misdemeanor at common law; and it was always wrong morally and legally. It is malum in se. State v. Brown, 38 Kan. 390, 16 P. 259 [8 Am.Crim.Rep. 165].

"It is gross and culpable negligence for a drunken man to guide and operate an automobile upon a public highway, and one doing so and occasioning injuries to another, causing death, is guilty of manslaughter. It was unlawful for defendant to operate his automobile upon the public highway while he was intoxicated; made unlawful by statute, and wrong in and of itself, and it was criminal carelessness to do so and he is guilty of manslaughter, provided the death of Agnes Thorne was a proximate result of his unlawful act. * * *

"It was not necessary for the people to show that defendant was able, while intoxicated, to reason and feel that in his intoxicated condition in operating the car he would quite possibly do something to make himself guilty of manslaughter.

"The instruction complained of was more favorable to defendant than he was entitled to. It is not the law that one who commits

the crime of manslaughter while under voluntary intoxication, and because of such intoxication, must be sober enough to fully realize that in his intoxicated condition he might do something to kill another. No intent is involved in involuntary manslaughter, and defendant's intoxication was the gravamen of his offense, and the greater the degree thereof the more aggravated his offense."

In the opinion of the Supreme Court of Tennessee in the case of Keller v. State, 155 Tenn. 633, 299 S.W. 803, 804, 59 A.L.R. 685, we find the question discussed in the following language:

"A question of more difficulty is raised by the contention that, if the intoxicated condition of plaintiff in error be conceded, nevertheless, it was not the cause or occasion of Goddard's death. * * *

"The unlawful acts with which the defendants in Holder v. State, supra [152 Tenn. 390, 277 S.W. 900] and Copeland v. State, supra [154 Tenn. 7, 285 S.W. 565, 49 A.L.R. 605], were charged were malum prohibitum. It was shown in Holder v. State, supra, that distinction was taken in the authorities in this connection between unlawful acts malum prohibitum and unlawful acts malum in se. Acts of the former class do not supply the criminal intent necessary to render one punishable for a homicide, unless the killing be the natural or probable result of the act. Acts of the latter class, malum in se, do supply the criminal intent.

"We are of opinion that the driving of an automobile upon the public highways of the state by one 'who is under the influence of an intoxicant,' as the quoted words are interpreted in Bostwick v. State, supra [154 Tenn. 1, 285 S.W. 49], is an unlawful act malum in se. An automobile in the hands of a sober and skillful driver upon the highway, operated according to law, is an instrumentality fraught with danger to others, and careful handling of such an instrumentality is essential to the public safety. It is highly criminal and perilous to life and property for those under the influence of an intoxicant to such an extent 'as to deprive them of their sense of discretion,' to undertake to run such a machine on the thoroughfares.

"Such being our view of the matter, we think the policy of the law forbids an investigation as to probable consequences, when the driver of an automobile 'under the influence of an intoxicant,' as heretofore defined, runs his car over another person and kills him on the public highways of the state. There are many things that a sober man, in the exercise of due care, would do to avoid such a collision, which would be entirely beyond an intoxicated driver. Fatalities are too numerous and conditions too serious to permit speculative inquiries in a case like the one before us.

"There is nothing radical or novel in this conclusion. The efficient cause of this accident was the operation of this car by plaintiff in error while under the influence of an intoxicant."

The trial court did not commit error in its refusal to direct a verdict of acquittal for defendant, nor in refusing defendant's requested instructions. The instructions given by the trial court when read as a whole fairly and correctly presented the law of the case to the jury. There was substantial evidence to support the verdict. No reversible error in the trial is shown. The judgment will be affirmed and it is so ordered.

LUJAN, C. J., and SADLER, McGHEE and COMPTON, JJ., concur.