THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ELYAH COPPOCK, Defendant.

Court of Special Sessions of the City of New York, New York County, June 1, 1954.

*Frank S. Hogan, District Attorney* (*Carroll W. Hayes* of counsel), for plaintiff.

*Arnold T. Ginsberg* for defendant.

*Per Curiam.* Defendant was charged, in an information on January 22, 1954, with a violation under the Laws of 1910, 1941, and subdivision 5 of section 70 of the Vehicle and Traffic Law of 1953, with driving an automobile while in an intoxicated condition — the latter amendment permitting the introduction of evidence of the amount of alcohol in the defendant's blood

taken within two hours of the time of his arrest, as demonstrated by a medical or chemical analysis of the breath, blood, urine or saliva.

It is undoubtedly true that the drinking driver has long presented a serious problem to law enforcement agencies interested in the safety of our highways and the protection of the lives and persons of pedestrians. Much has been said in and out of print concerning the Christian magnanimity of the public in taking this flagrant sinner — the inebriate — to its bosom again after showing him very thoroughly what it could do in the way of chastisement. His sins, though they were at times scarlet, have been often washed white in the blood of time. It is high time, indeed, that our modern cities, with their ever-increasing population and the operation of vast numbers of motor vehicles, should no longer be exposed to the danger of the potential killer — the drunken driver. Serious conflicts have at times resulted in the proof as to whether or not the accused was actually under the influence of liquor so as to demonstrate that the driver has lost to some extent that clearness of intellect and self-control that he would otherwise possess. For this purpose we are inclined to accept the definition of what constitutes a person to be " under the influence of liquor " adopted by the American Medical Association committee on medico-legal problems, and approved by Dr. Heise, that such a person is so considered when " he has lost to any extent some of that clearness of intellect and self-control that he would otherwise possess."

Hence, the Legislature last year added subdivision 5 of section 70 of the Vehicle and Traffic Law to meet the challenge of the old law, and thus silence the doubters of the efficacy of interpretation by means of an established and scientific device known as the " Drunkometer."

This is the first time that a case has been presented to this court under the amended law, and important legal questions have been urged in behalf of defendant. Defendant has had the benefit of additional counsel, representing defendants similarly charged with a violation of the instant statute, and they were permitted to cross-examine the experts who were introduced by the prosecution under an appropriate stipulation.

Briefly, the facts in the instant case are substantially as follows: Patrolman Caddle was on radio patrol from the 30th Precinct at about 4:30 A.M., at One Hundred and Fifty-second Street and Broadway, when he saw a female occupant of a taxicab operated by defendant extend her body from the cab and

heard her scream. The officer pursued the swaying cab from One Hundred and Fifty-second Street and Broadway to One Hundred and Forty-eighth Street and Broadway, when he overtook defendant, as a result of which the cab's occupant jumped out; defendant remained at the wheel, looking straight ahead and ignoring questions put by the officer, as contended by the People; when defendant did ultimately leave the taxi, with difficulty it took him some minutes to produce his operator's and vehicle registration; defendant was asked by the officer whether he had been drinking; the former replied in a childlike manner that he had not, the officer noticing the defendant's eyes were bloodshot and a moderate odor of an alcoholic beverage came from defendant's breath. The defendant was assisted into the police car, where he was driven to the precinct, and a co-ordination or sobriety test and various questions propounded to defendant. The latter finally admitted he had some three or four drinks of gin — large glasses — and had not been under a doctor's or dentist's care. Various other tests were put to defendant, and the People argue that defendant did not submit to same satisfactorily.

Defendant was then taken to the intoxicated drivers' testing unit, following his being booked for driving while intoxicated. The officer testified that at all times, except during the ride from One Hundred and Forty-eighth Street and Broadway to the 30th Precinct, he had defendant constantly under observation, and that defendant had neither food nor drink until some time after the Drunkometer test was given. The officer gave it as his opinion upon observations of defendant that defendant was intoxicated. At the precinct, within the statutory period of two hours, defendant was given the Harger Drunkometer test. All the necessary preliminary questions and observations were made of the defendant. The balloon was inflated by defendant with his breath and the test run. When the " end-point " was reached the test was stopped. Following the appropriate procedures, the alcohol present in defendant's blood was calculated, and the results showed there was 0.25% of alcohol in defendant's blood at the time of the test.

The People's expert, Dr. Herman A. Heise, testified that it was his opinion that any person with over 0.15% of alcohol in his blood was intoxicated, and thus such a person's judgment and ability to drive an automobile was considerably impaired. The defendant testified in his own defense; no other witness or any expert was called in defendant's behalf. In substance, the

defendant testified that after dinner on the day in question he joined some friends and had four glasses of gin. After going to bed he awoke at 1:00 A.M., January 22, 1954, and went to the garage. He picked up a female passenger, who asked to be taken to the George Washington Bridge. He claimed the passenger asked him to go to a subway station and subsequently she yelled out "Help! Help! He is trying to kill me."

Defendant urges four reasons for his acquittal: (a) that section 71-a of the Vehicle and Traffic Law is unconstitutional, and both the test and the evidence exhibited were inadmissible; (b) that defendant was not advised he could have a physician of his own choice administer a chemical test; (c) that defendant was not warned by the officer administering the test that if he failed to submit to the test his license would be revoked, and (d) that the Harger Drunkometer is an inaccurate and unreliable test.

As to the claim set forth in (a), Justice EAGER, in *Matter of Schutt* v. *Macduff* (205 Misc. 43, 55), held only that that part of section 71-a was unconstitutional which related to the absence of a provision for a hearing prior to revocation. The court there specifically stated that the decision was "not intended to and should not affect the practice established by the police in various municipalities or sections of the State of requesting one to submit to a chemical test where he has been duly arrested for driving while intoxicated, nor should it limit the lawful use of the results of such a test when voluntarily submitted to."

The record is completely barren of any claim of compulsion or coercion. On the other hand, in *People* v. *Spears* (201 Misc. 666), a motion made to suppress evidence resulting from the defendant's examination through the use of a Drunkometer to establish the amount of alcohol in his blood was in all respects denied.

Concerning points (b) and (c), that defendant was not advised that he could have a physician of his own choosing, etc., there is no merit to defendant's contention. It is axiomatic that defendant is presumed to know the law and extends to a situation set forth in *Holland* v. *Atlantic Stevedoring Co.* (210 App. Div. 129, 205, affd. 239 N. Y. 605). A recent decision by the Court of Appeals on May 20, 1954, in *People* v. *Ward* (307 N. Y. 73), unanimously upheld the principle that in the absence of any proof of coercion or compulsion the defendant was bound by the test.

Finally, as to claim (d), concerning the accuracy and reliability of the Harger Drunkometer. At this point reference is made to the Legislative Committee Report on Chemical Tests for Intoxication (N. Y. Legis. Doc. [1953], No. 25), to be examined for comparison (*People* v. *Kovacik*, 205 Misc. 275; *People* v. *Barnes*, 197 Misc. 477, and *People* v. *Spears*, 201 Misc. 666, *supra*).

We have the testimony of the inventor of the Drunkometer, Dr. R. M. Harger, that as a result of an experiment he devised a " reagent " that reacted accurately to breath alcohol, and that relying on Henry's Laws he developed the ascarite and gasometer formulae which gave an accurate result concerning the amount of alcohol by weight in a subject's blood. Detective Osterburg swore that he made a thorough survey of all scientific devices designed to determine the amount of alcohol in a driver's blood, and it was his opinion that the Harger Drunkometer was the most desirable type of device to be applied.

Summarizing the testimony of Dr. Heise, another expert called by the People, his conclusions were predicated on his study of the behavior and effects of alcohol when consumed by human beings. Alcohol, he testified, is first absorbed into the blood stream until it is fed through the blood stream; that according to Henry's Law of Physics, at any temperature the ratio of concentration of substances in specified liquids, and the air above the liquid is constant; hence, it is possible to measure the concentration of alcohol in the blood which is aerated as it runs through the lungs.

As has been argued, the amendment in question merely adds to the present law, an additional safeguard that protects both the People and the accused, and in no manner curtails police practices. We are satisfied that the Harger Drunkometer, from the expert testimony and the most elaborate cross-examinations by several counsel, is an accurate and reliable device to be used and recognized under the statute. In the instant case we have had the benefit of an actual physical demonstration of the drunkometer. Indeed, even defendant's attorney tried, but unsuccessfully, to show that the use of buttermilk and orange juice, among other substances, imbibed in the same manner, would affect adversely the Drunkometer.

The proof in the instant case clearly showed that both on the sobriety test imposed by general police practices, and under the Drunkometer the defendant's guilt was established beyond a reasonable doubt. Indeed, under the latter test the defendant's guilt was overwhelmingly convincing.

The court desires to commend the various counsel for this defendant and others for aiding it in formulating their contentions, and particularly to Assistant District Attorney Hayes in his excellent presentation of the fine technical and expert testimony.

Defendant's motions are accordingly in all respects denied, and he is found guilty as charged.

HOFFMAN, IMPELLITTERI and MULCAHY, concur.