509 P.2d 264

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Benjamin A. DUTCHOVER, Defendant-Appellant.**

**No. 1067.**

Court of Appeals of New Mexico.

March 30. 1973.

---

Jerry L. Williams, Heidel, Samberson, Gallini & Williams, Lovington, for defendant-appellant.

David L. Norvell, Atty. Gen., Dee C. Blythe, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Convicted of homicide by vehicle, defendant appeals. The issues concern: (1) the sufficiency of the evidence and (2) a refused instruction.

Section 64–22–1, N.M.S.A.1953 (2nd Repl.Vol. 9, pt. 2) defines the crime as ". . . the killing of a human being in the unlawful operation of a motor vehicle." The "unlawful operation" relied on by the State was driving a vehicle while either under the influence of intoxicating liquor or under the influence of a narcotic drug,

or both. Section 64–22–2, N.M.S.A.1953 (2nd Repl.Vol. 9, pt. 2).

*Sufficiency of the evidence.*

■ Defendant challenged the sufficiency of the evidence by motions for a directed verdict at the close of the State's case and again at the close of all the evidence. Our review of the evidence is in the light most favorable to the State. State v. Gregg, 83 N.M. 397, 492 P.2d 1260 (Ct.App.1972); State v. McKay, 79 N.M. 797, 450 P.2d 435 (Ct.App.1969).

Defendant asserts the evidence is insufficient as to three items: (a) the evidence of driving while under the influence of intoxicating liquor, a narcotic drug, or both; (b) evidence as to proximate cause of death; and (c) evidence of criminal intent. We disagree.

■ (a) Defendant was driving the vehicle which crossed a double yellow line and struck another vehicle. The issue under item (a) concerns the evidence of being "under the influence," both as to the intoxicating liquor and as to a narcotic drug. "Under the influence" means that to the slightest degree defendant was less able, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle an automobile with safety to himself and the public. State v. Deming, 66 N.M. 175, 344 P.2d 481, 77 A. L.R.2d 964 (1959); State v. Sisneros, 42 N.M. 500, 82 P.2d 274 (1938).

There is evidence that on May 4, 1972, at 7:49 p. m., the defendant, while driving fast without lights, veered into the lane of an oncoming car driven by Mr. Fierro, striking it almost head-on. Mr. Fierro testified that when the other car got close to him he saw that the driver had his hands up in the air.

An investigating officer found an opened can of beer on the floorboard under the steering wheel. The officer talked to defendant at the hospital about an hour after the accident. On the basis of the officer's training, experience with intoxicated persons, the smell of defendant's

breath and defendant's speech, the officer was of the opinion that defendant's ability to drive was impaired. See State v. Fields, 74 N.M. 559, 395 P.2d 908 (1964); City of Portales v. Shiplett, 67 N.M. 308, 355 P.2d 126 (1960).

A blood alcohol test by the gas chromatography method showed .075 percent alcohol. A urine alcohol test showed .086 percent alcohol. The blood and urine samples were taken from defendant at about 9:00 p. m. on the night of the accident. See § 64–22–2.10, N.M.S.A.1953 (2nd Repl.Vol. 9, pt. 2).

Defendant testified that he had imbibed 5 or 6 beers during the day, the last being one and one-half hours prior to the accident. Previous statements of the defendant indicate he had five beers in the afternoon, the last of which was about an hour before the accident. Defendant testified he was not aware he was on the wrong side of the road before the accident.

A test for drugs was also performed. Morphine content of the blood was .15 micrograms per milliliter; morphine content of the urine was .45 micrograms per milliliter. According to the toxicologist, the morphine came from either heroin, morphine, or codeine. Defendant admitted to taking a "little bit" of heroin on the day of the accident. The toxicologist could not say whether this amount of morphine would affect the average person; that the effect would depend on whether a person was used to taking the drug. He also testified: ". . . It takes a lot less heroin than alcohol to give a person an affect [sic]. He might be dead if he had a corresponding level of morphine equated to the alcohol." Defendant testified: ". . . That was the first time I ever used drugs before."

The evidence of a first time use of heroin, the amount of morphine disclosed by the tests, together with the circumstances of the accident disclosed in discussing whether defendant was under the influence of intoxicating liquor, permits the inference that defendant was driving while under the influence of a narcotic drug.

There is substantial evidence that defendant was driving the car while under the influence of either intoxicating liquor, or a narcotic drug, or both.

(b) The decedent, Gloria Gonzales, was a passenger in the front seat of defendant's car at the time of the accident. Defendant contends there is no evidence that defendant's driving while "under the influence" was the proximate cause of Gloria's death. There are two answers to this contention. First, no "proximate cause" issue was raised by defendant's motions. He cannot raise that issue for the first time on appeal. State v. Martinez, (Ct.App.) 84 N.M. 766, 508 P.2d 36, decided March 9, 1973. Second, there is evidence that defendant, while driving "under the influence," caused an accident; that Gloria suffered injuries in the accident; and that Gloria died from those injuries. This is substantial evidence of proximate cause. See State v. Sisneros, supra.

As a part of his proximate cause argument, defendant would apply the uncontradicted evidence rule. He claims the evidence is uncontradicted that Gloria had passed out and fallen against defendant and that the accident occurred when defendant ". . . pushed her over and turned around to straighten her up. . . ." The evidence on which this contention is based is not uncontradicted evidence within the meaning of the uncontradicted evidence rule announced in Medler v. Henry, 44 N.M. 275, 101 P.2d 398 (1940).

The so-called uncontradicted evidence comes from two additional passengers in defendant's car and from defendant himself. There is evidence that the two passengers were so drunk they did not know what happened. We have previously referred to the circumstances of the accident and the tests concerning alcohol and morphine. The uncontradicted evidence rule is not applicable because legitimate in-

ferences from the facts and circumstances cast reasonable doubt on the truth of the version of the accident to which defendant and the two passengers testified. Bell v. Kenneth P. Thompson Co., 76 N.M. 420, 415 P.2d 546 (1966).

■ (c) The jury was instructed that criminal intent was a necessary element of the crime of homicide by vehicle. Defendant claims the evidence of criminal intent is insufficient. One of the State's contentions is that no such intent is required. Both parties erroneously argue the concept of specific intent; defendant says there is no evidence that defendant intentionally drove on the wrong side of the street; the State says there can rarely be proof that a defendant had the specific intent of killing somebody with a motor vehicle. No specific intent is involved. The criminal intent involved is that of a mental state of conscious wrongdoing. State v. Jordan, 83 N.M. 571, 494 P.2d 984 (Ct.App.1972). The trial court so instructed the jury.

■ Defendant asserts the only evidence of criminal intent is that defendant voluntarily was "under the influence." He contends this is no more than evidence of a statutory violation, and more than a statutory violation must be shown to support a conclusion of criminal intent. The answer is that it depends on the particular statutory violation.

Here, we have two statutory violations— that of driving under the influence of intoxicating liquor and of driving under the influence of a narcotic drug. See § 64–22–2, supra. We have the voluntary act of becoming under the influence. We have the voluntary act of driving. Voluntarily driving a vehicle while under the influence is an act malum in se and this action is substantial evidence of criminal intent. See Keller v. State, 155 Tenn. 633, 299 S.W. 803, 59 A.L.R. 685 (1927), which is quoted and approved in State v. Alls, 55 N.M. 168, 228 P.2d 952 (1951). Compare State v. Hayes, 77 N.M. 225, 421 P.2d 439 (1966); State v. Rice, 58 N.M. 205, 269 P.2d 751 (1954);

State v. Clarkson, 58 N.M. 56, 265 P.2d 670 (1954).

*Refused instruction.*

Defendant asserts the trial court erred in refusing his requested instruction directed to the statutory presumptions concerning intoxication. These presumptions are based on tests of blood to determine the percentage, by weight, of alcohol.

Defendant's requested instruction would have informed the jury that if the blood tested contains .05% or less by weight of alcohol the presumption was that the person whose blood was tested was not under the influence of intoxicating liquor. The requested instruction would also have informed the jury that this presumption does not limit the introduction of other competent evidence. To this point, the requested instruction is consistent with § 64–22–2.10, supra.

■ The next portion of the requested instruction is inconsistent with that statute. The next portion would have told the jury that unless the jury found the blood " . . . contained more than .05% by weight of alcohol, you shall presume that the defendant was not under the influence of intoxicating liquor. . . ." This quoted phrase would apply the presumption based on a .05% test result and would disregard the provision of § 64–22–2.10, supra, which states: "The presumptions . . . do not limit the introduction of other competent evidence. . . ." Specifically, this portion of the requested instruction would have given the .05% test result a conclusive effect regardless of other competent evidence.

" . . . [I]n case of failure to instruct on any issue, a correct written instruction must be tendered. . . ." Section 21–1–1(51)(2)(h), N.M.S.A.1953 (Repl. Vol. 4). It is not error to refuse a requested instruction which is a misstatement of the law. State v. Torres, 82 N.M. 422, 483 P.2d 303 (1971). Defendant's requested instruction would have misstated the law inasmuch as evidence other than the test

result was admissible to show defendant was under the influence of intoxicating liquor.

The judgment and sentence is affirmed. It is so ordered.

HERNANDEZ, J., concurs.

SUTIN, J., dissents.

SUTIN, Judge (dissenting).

(a) *The Trial Court Erroneously Instructed the Jury on the Crime Charged.*

The defendant was charged with " . . . the crime of Homicide by Vehicle, contrary to Section 64–22–1, N.M.S.A.1953, as amended, and alleges that the defendant did kill Gloria Garza Gonzales in the unlawful operation of a motor vehicle in violation of Section 64–22–2, N.M.S.A.1953 (Operating a motor vehicle upon a public highway while under the influence of *intoxicants*), . . .". [Emphasis added] This allegation was necessary if the district attorney wanted to eliminate the offense of narcotic drugs as provided in § 64–22–2(B), N.M.S.A.1953 (2nd Repl. Vol. 9, pt. 2).

"Intoxicants" mean "alcoholic drinks." Webster's Third New International Dictionary (1966); 1 Roget's International Thesaurus, pp. 631–34, § 994 (1970). Daniels v. The State, 155 Tenn. 549, 296 S.W. 20, 23 (1927); Furry's Admr. v. General Accident Ins Co., 80 Vt. 526, 68 A. 655, 15 L.R.A.,N.S., 206 (1908). It has no reference to narcotic drugs.

Defendant was not charged with being under the influence of any narcotic drug as provided in § 64–22–2(B), supra. Yet, during the trial, tests for drugs were admitted in evidence. The trial court instructed the jury that "[t]he Information upon which the defendant is being tried charges that the defendant is guilty of Homicide by Vehicle by reason of either *driving while under the influence of a Narcotic drug* or alcohol or both of them." [Emphasis added] This criminal charge and the term ";narcotic drug" appear in five

instructions. The jury found "the defendant guilty as charged in Count I of the Information being the crime of Homicide by Vehicle."

It is of no concern to me that the trial court and attorneys misconstrued the charge made in the information. State v. Varos, 69 N.M. 19, 363 P.2d 629 (1961). The liberty of the defendant is at stake. " . . . [I]f we in New Mexico are to keep abreast with modern trends of the law, . . . we have no alternative but to reverse the case, no matter how outrageous a crime may have been committed by this defendant." State v. Padilla, 66 N.M. 289, 291, 347 P.2d 312, 317, 78 A.L.R.2d 908 (1959).

The district attorney's duty is to state the criminal offense in the information " . . . sufficient to give the court and the defendant notice of what offense is intended to be charged." Section 41–6–7(b), N.M.S.A.1953 (2nd Repl. Vol. 6). Repealed by Supreme Court order entered May 3, 1972, and effective July 1, 1972. Compare, § 41–23–5(c), N.M.S.A.1953 (2nd Repl. Vol. 6, Supp.1972), which provides that the information must contain " . . . the essential facts. . . . " See, State v. Ardovino, 55 N.M. 161, 228 P.2d 947 (1951).

The defendant was charged with the crime of Homicide by Vehicle caused by driving the vehicle while under the influence of intoxicating liquor as provided by § 64–22–2(A), supra.

At the close of the state's case and at the close of all the evidence, defendant moved for a directed verdict of not guilty on both narcotic drugs and intoxicating liquor. The motions were overruled. The information was not amended. Inasmuch as no narcotic drug offense was charged, it it was fundamental error to instruct the jury that defendant was charged with the offense. State v. Garcia, 19 N.M. 414, 421, 143 P. 1012 (1914); State v. Buhr, 82 N.M. 371, 482 P.2d 74 (Ct.App.1971). The defendant did not have a fair trial. Hoffman v. State, 79 N.M. 186, 441 P.2d 226 (Ct.App. 1968).

I quote with approval the language of Justice Field in his dissenting opinion in O'Neil v. Vermont, 144 U.S. 323, 12 S.Ct. 693, 36 L.Ed. 450 (1892). On pages 365, 366, 12 S.Ct. page 709, he said:

> Due process of law required a specific description of all the offences for which the defendant was to be put on trial. Proceeding without it was not due process of law; and, in my judgment, no legislation of Vermont could make it so. And it is to me a surprising doctrine that a party can be tried for and convicted of a criminal offence not alleged against him, and afterwards, when the sentence is attempted to be enforced, can be prevented from taking the objection that no offence was charged in the accusation, because no defect of that kind was urged at the trial. So far from the defect being waived, or he being then estopped from insisting upon the objection by his previous silence, I think he could justly claim that the whole proceeding was a nullity, a mere mockery of justice.

> It is the established rule of the common law, which has prevailed in England and in this country since the revolution of 1688, if not for a period anterior to it, that in all criminal prosecutions the accused must be informed of the nature and cause of the accusation against him. It is the law of every civilized community, and *in no case can there be, in criminal proceedings, due process of law where the accused is not thus informed.* The information which he is to receive is that which will acquaint him with the essential particulars of the offence, so that he may appear in court prepared to meet every feature of the accusation against him. As said by Chief Justice Gibson of the Supreme Court of Pennsylvania in Hartmann v. Commonwealth, 5 Penn.St. 60, 66: "Precision in the description of the offence is of the last importance to the innocent; for it is that which marks the limits of the accusation, and fixes the proof of it. It is the only hold he has on the jurors, judges as they are of the fact and the law." [Emphasis by court]

(b) *The Trial Court Erred in Failing to Instruct on Statutory Presumptions on Intoxication.*

Section 64-22-2(A), N.M.S.A.1953 (2nd Repl. Vol. 9, pt. 2), reads as follows:

> It is unlawful for any person who is under the influence of intoxicating liquor to drive or be in actual physical control of any vehicle within this state.

The core of this statute is not the "influence of intoxicating liquor," but the right to drive a car. Prior to 1969, we read into this statute that "under the influence" meant unsafe operation of a vehicle. In 1969, the Implied Consent Act was passed [§§ 64-22-2.4 to 64-22-2.12, N.M.S.A.1953 (2nd Repl. Vol. 9, pt. 2)] to determine alcoholic content of the blood. For the weaknesses in this act, see, Leathers, Implied Consent in New Mexico, 10 Natural Resources J. 378 (1970).

Section 64-22-2.10, supra, provides that for purposes of determining whether a driver is under the influence of intoxicating liquor, the results of chemical blood tests may be introduced in evidence in criminal cases. These chemical tests create presumptions whether or not a person is under the influence.

This statute bears a direct relationship to the criminal charge, supra. Where chemical tests are introduced in evidence, an instruction to the jury on presumptions is mandatory and the failure to do so is reversible error. State v. Henderson, 81 N.M. 270, 466 P.2d 116 (Ct.App.1970).

The defendant tendered an instruction on presumptions which the trial court refused. No other instruction on this issue was given. This instruction was correct. That portion of the instruction which the majority hold incorrect reads as follows:

> You are instructed, therefore, that unless you find *from all of the evidence* and beyond a reasonable doubt that the defendant's blood at the time of the collision which resulted in the death of Gloria Garza Gonzales contained more than .05% by weight of alcohol, you shall pre-

sume that the defendant was not under the influence of intoxicating liquor. [Emphasis added]

The words "from all of the evidence" cover the statutory requirement that the jury may consider "other competent evidence concerning whether or not a person was under the influence of intoxicating liquor." Section 64–22–2.10, supra.

Furthermore, under § 41–23–41(a), N.M.S.A.1953 (2nd Repl. Vol. 6, Supp.1972):

The court must instruct the jury upon all questions of law necessary for guidance in returning a verdict.

The courts hold, with one concurring opinion to the contrary, that instructions on these statutory presumptions cannot be relied upon in a prosecution for motor vehicle homicide, Annot., 16 A.L.R.3d 748 at 756, because the statutes specifically limited the presumptions to prosecutions for driving a vehicle under the influence of intoxicating liquor. This limitation appears in § 64–22–2.10, supra.

But it is illogical, unreasonable and senseless to say that the chemical tests can be admitted in evidence in a prosecution for homicide by vehicle while driving under the influence of intoxicating liquor to convict the defendant, and then deny the defendant the benefits of presumptions created by the tests. This is specious reasoning. I am convinced of this by the effect of alcohol on each individual.

In State v. Hanson, 73 N.W.2d 135, 140 (N.D.1955), the court said:

It is also commonly known that there is a great variation in the effect that liquor produces upon individuals. The quantity of liquor taken by one individual, which does not seem in any way to affect him, may cause another to lose that clearness of intellect and control that he would otherwise have had. It clearly is not the *amount involved*, but the effect that determines whether the person is under the influence of intoxicating liquor. [Emphasis by court]

See also, People v. Bevilacqua, 12 Misc.2d 558, 170 N.Y.S.2d 423 (1958).

The danger involved is the attitude of members of the jury toward persons drinking alcoholic beverages—whether they believe it to be morally right or wrong. They must, by every guide, be instructed on the issue which involves statutory presumptions.

(c) *"Slightest Degree" Should be Deleted.*

The words "slightest degree" should be removed from the legal vocabulary. It should be deleted from the definition of "Under the Influence" as set forth in the majority opinion. If these words are deleted, "under the influence of intoxicating liquor" means that the defendant was less able, either mentally or physically, or both, to exercise clear judgment, and, with steady hands and nerves, operate an automobile with safety to himself and to the public. People v. Sullivan, 132 Ill.App.2d 674, 270 N.E.2d 571 (1971); compare, City of Toledo v. Starks, 25 Ohio App.2d 162, 267 N.E.2d 824 (1971).

In the instant case, the trial court correctly omitted the words "slightest degree" in its instructions to the jury.

The "slightest degree" formula used in State v. Deming, 66 N.M. 175, 344 P.2d 481, 77 A.L.R.2d 964 (1959); State v. Sisneros, 42 N.M. 500, 82 P.2d 274 (1938), should be rejected by the Supreme Court.

In Goodman v. Brock, 83 N.M. 789, 498 P.2d 676 (1972), the Supreme Court discarded the phrase "slightest doubt" in summary judgment cases.

There can be no degrees of duty. Duty is an absolute term. The use of such terms as "slight care," "great care," "highest degree of care," "extraordinary diligence," "slight diligence," are all misleading. Archuleta v. Jacobs, 43 N.M. 425, 94 P.2d 706 (1939).

No degrees of actionable negligence are recognized in New Mexico. Gray v. Esslinger, 46 N.M. 421, 130 P.2d 24 (1942).

Judges, like lawyers, should study Wei-hofen, Legal Writing Style (1961). On page 11, the author wrote:

> The difference between the right word and the almost right word, said Mark Twain, is the difference between lightning and the lightning bug.

For purposes of comparison, let us turn to § 64–22–2(B), supra, the narcotic statute. It reads in part as follows:

> B. It is unlawful for any person . . . under the influence of, any narcotic drug, . . . *to a degree* which *renders* him incapable of safely driving a vehicle, to drive . . . any vehicle in this state. . . . [Emphasis added]

The phrase "to a degree," does not mean "that to the slightest degree." It means, "to some extent," "in some measure," "somewhat." 1 Roget's International Thesaurus, p. 12, § 29.7 (1970).

The above statute makes it unlawful for any person to drive a vehicle who is "to some extent" or "somewhat" under the influence of a narcotic drug which "makes" him incapable of safely driving a vehicle.

The core of this statute is not the influence of a narcotic drug, but the incapability of the defendant to safely drive a car. In order for a defendant to be guilty, the evidence must show, and the jury must be instructed on, the incapability of the defendant to safely drive his car.

The trial court correctly instructed the jury in part:

> If, on the other hand, the use of a narcotic drug . . . had not affected his ability to operate the motor vehicle in the manner of a person of ordinary prudence in full possession of his faculties under the same circumstances, he would not be guilty of a violation of this statute.

We must note that "incapability of safely driving a vehicle" does not appear in the intoxication section which immediately precedes it. This makes it clear that "under the influence" does not mean that to "the slightest degree" the defendant was less able to operate his vehicle safely. Under the Implied Consent Act, this definition of "under the influence" disappears if the Supreme Court agrees.

A person is "under the influence of liquor" when "he has lost to any extent some of the clearness of intellect and self-control that he would otherwise possess." People v. Coppock, 206 Misc. 89, 133 N.Y.S.2d 174 (1954). "The test itself does not declare guilt nor innocence, nor the fact of intoxication, which still is to be determined by the testimony of experts interpreting the test." People v. Conterno, 170 Cal.App.2d Supp. 817, 339 P.2d 968 (1959). The state's expert in the instant case said it was really impossible to tell whether defendant was under the influence of intoxicating liquor under the tests made.

A review of the record convinces me there was no evidence that defendant "lost to any extent some of the clearness of intellect and self-control that he would otherwise possess" at the time of the accident.

Defendant is entitled to a new trial.