Ellsworth N. Lawrence
(Franklin County Judge and Acting Judge for Essex County). This appeal from a judgment of conviction and sentence comes before me as acting County Judge of Essex County. It presents some interesting facts, not the least of which is that the conviction arose from an arrest for public intoxication made within a few hours after the defendant’s election as Mayor of Ticonderoga. There was a post-election celebration, in the course of which a man named Smith, driving his car on a public highway with the defendant and others as passengers, was stopped by the State police for crossing a white line. Smith went to the police car while the troopers were making out a summons for him. As this was going on, the defendant left the Smith car and went to the police car. The troopers, observing the defendant’s appearance, conduct and manner of speech, arrested him for public intoxication in violation of section 1221 of the Penal Law. The troopers then took the defendant to the home of Justice of the Peace Henry, who also observed the defendant at the time of the laying of the information and the taking of a deposition. The defendant was subsequently convicted after a trial before Justice of the Peace Barry, to whom the case had been transferred by order of the County Court.
The first question is whether the information was legally sufficient. I hold that it was.
*560 People v. Schultz (301 N. Y. 495, 497) holds that an information must contain 1 ‘ a statement * * * as to when and where the acts were committed The information meets that test. (See, also, People v. Patrick, 175 Misc. 997; People v. Zeigler, 144 Misc. 803; People v. Copit, 187 Misc. 744.)
People v. Weaver (188 App. Div. 395) is not authority on the sufficiency of an information. Other authorities cited by appellant in the reply brief are not to the contrary.
Although the statute (Penal Law, § 1221) now directly provides that its violation constitutes an offense, the defendant claims that he was improperly deprived of a right to trial by jury.
He cites People v. Reson (249 App. Div. 54). In that case the Third Department held that a man who broke out of jail while confined on a sentence for public intoxication could be indicted for escape as a misdemeanor, holding the public intoxication was a misdemeanor and not an offense. That court stated that a person charged with public intoxication was entitled to a jury trial.
People v. Reson (supra) is however, not the law of this State. The identical problem arose in People v. Murphy (177 Misc. 1042). In the Murphy case, the County Court sustained a demurrer to an indictment for escape under the same circumstances, holding that public intoxication was an offense.
The Murphy case was appealed to the Fourth Department. The judgment of the County Court was there affirmed, without opinion, although by a divided court. (People v. Murphy, 263 App. Div. 1051.) The Murphy case was then appealed to the Court of Appeals. There it was also affirmed without opinion, all concurring (People v. Murphy, 288 N. Y. 613).
The Court of Appeals has thus settled the law. There is no right to a jury trial for public intoxication under section 1221 of the Penal Law. Public intoxication is an offense, triable summarily by the court. (See, also, McQuage v. City of New York, 285 App. Div. 249; People v. Waters, 153 Misc. 686; People v. Cleary, 182 Misc. 302.)
The next question raised by appellant is whether the statement of the District Attorney constituted an opening sufficient to comply with section 388 of the Code of Criminal Procedure. I hold that it did under the rule laid down in People v. Levine (297 N. Y. 144).
But as this case involved the question of whether or not an opening must be made by the District Attorney on the trial of an offense, it may be well to review the law on the subject.
*561 In People v. Wallens (297 N. Y. 57) the Court of Appeals laid down the rule that the District Attorney must make an opening statement in the trial of misdemeanors in Courts of Special Sessions. The reasoning was that the provisions of sections 62 and 388 of the Code of Criminal Procedure applied to cases involving jury trials. (See, also, People v. Ginn, 2 Misc 2d 987.)
The purpose of an opening has been stated by the Court of Appeals to be “ to the end that the jury, upon listening to the evidence, may better understand and appreciate its connection and bearing upon the case.” (People v. Benham, 160 N. Y. 402, 434.)
Recently, in People v. Sperbeck (5 Misc 2d 849) the County Court of Otsego County has held that the District Attorney must also make an opening statement in cases of offenses. The reasoning is that the defendant should be apprised of the nature of the charge and the proof which the People expect to submit so that the defendant may have every opportunity to meet such proof.
This court has the highest regard and respect for the opinions of the able County Judge of Otsego County. But neither the Court of Appeals nor any of the Appellate Divisions has yet spoken on this subject and section 388 of the Code of Criminal Procedure, as well as related sections, only apply to courts of Special Sessions “ as far as may be ”. (Code Crim. Pro., § 62; People v. Wallens, 297 N. Y. 57, supra.)
This case might furnish logical reason for a different rule. The Trial Justice read the information and deposition aloud to the defendant. Defense counsel moved to dismiss the information. Such motion was opposed by the District Attorney, who referred to the information and deposition. It would seem that in this state of the record, even before the opening, both the Justice of the Peace as trier of the facts and the defendant were well apprised of the nature of the accusation and the prospective proof.
There are, perhaps, further considerations. If the District Attorney must open, then the defendant may open (Code Grim. Pro., § 388). Each party must then have the right to close. There being no jury to charge, should the parties have the privilege in summation, to discuss such matters as reasonable doubt, particularly where the justice is not a lawyer? In view of the present uncertainty of the meaning of the phrase 11 as far as may be ” in section 62 of the Code of Criminal Procedure, it might be well if one of the higher courts would settle the law' on this point.
*562 The next question is whether the evidence was sufficient to sustain a verdict of guilty. I hold that it was. Nothing to the contrary is found in People v. Trimarchi (231 N. Y. 263), nor in People v. Suffern (267 N. Y. 115), nor in People v. Woltering (275 N. Y. 51), nor in Belcher v. United States (5 F. 2d 45).
Neither does People v. Gomez (271 App. Div. 1032) afford any help to the defendant. The evidence there was very weak.
Defendant cites Matter of Bolani v. O’Connell (271 App. Div. 850). But in that case the Court of Appeals reversed Matter of Bolani v. O’Connell (296 N. Y. 871). The evidence that the persons to whom the licensee had sold beer were in fact intoxicated was held by the Court of Appeals to be substantial, although the only proof of intoxication seems to have been that such persons staggered and spoke incoherently.
Defendant also cites Matter of Radigan v. O’Connell (280 App. Div. 92). There the question presented was also whether the State Liquor Authority could cancel a license. The Authority had cancelled it upon several grounds, of which one was that beer had been sold to an intoxicated person. The proof offered in support of such intoxication was that the man staggered, that his eyes were bloodshot, that he talked incoherently in part, that he leaned heavily on a bar for support and that he staggered to a table. There was evidence on the part of the licensee that the man suffered from a physical defect.
In the Radigan case the Appellate Division, reviewing the determination of the State Liquor Authority, held that the evidence on this point and also on the other points was not substantial.
Then there was an appeal to the Court of Appeals. There it was held (Matter of Radigan v. O’Connell, 304 N. Y. 396) that there was substantial evidence to support the determination of the State Liquor Authority that the licensee had permitted the sale of an alcoholic beverage to an intoxicated person. The Court of Appeals reversed the Appellate Division on this sole ground, saying (p. 399): “ The court may not substitute its judgment for that of the Liquor Authority on a controverted question of fact
In the reply brief the defendant cites the dissenting opinion in People v. Frank (245 App. Div. 777) and the case of People v. Trumbul (63 N. Y. S. 2d 720). The opinions cited deal with the value of evidence given by police officers. They do not affect the result reached here.
The defendant further claims that it was reversible error to allow Justice of the Peace Henry to testify as a witness before *563 Justice of the Peace Barry. Justice Henry was the Justice before whom the defendant was first charged with this offense. By appropriate order of the County Court, the case was thereafter transferred to Justice Barry for trial. On the trial Justice Henry was allowed to testify as to his observation of the defendant at the time of the laying of the information and to give his opinion that the defendant had been intoxicated at that time. He also testified that some hours later, when his court was not in session, the defendant admitted that he had been drunk and still later denied it.
The objection to the testimony of Justice Henry was not an objection to the evidence but to his competency as a witness.
By sections 346 to 354 of the Civil Practice Act, the State has declared our public policy as to the competency of witnesses. These rules of evidence apply to criminal cases with certain added limitations which are not material here (Code Crim. Pro., § 392).
Examination of the authorities and cases on this subject discloses that a distinction is drawn between the one situation where a judge or justice is allowed to testify before another judge as to matters previously had in his own court and that other situation where the judge or justice would not be allowed to step down from the Bench and testify in a trial over which he is then presiding. This distinction is shown in Richardson on Evidence (8th ed., § 422) and in Corpus Juris Secundum (Yol. 97, Witnesses, § 105 et seq.). (See People v. McDermott, 180 Misc. 247; Matter of Heyward, 1 Sandf. 701; Agan v. Hey, 30 Hun 591; People v. Miller, 2 Parker Cr. Rep. 197; People v. Dohring, 59 N. Y. 374; People ex rel. Singer v. Rogers, 254 App. Div. 865.)
People v. Stein (221 App. Div. 500) is not to the contrary. The question there involved the right to counsel and the right of a defendant to make or to waive the making of a statement under sections 188 and 196 of the Code of Criminal Procedure.
It is further objected that that part of Justice Henry’s testimony in which he was allowed to state that the defendant had later admitted being drunk the night of the arrest and still later denied it amounted to an offer to plead guilty which could not be admitted in evidence.
It is not necessary to consider the cases on the effect of an offer to plead guilty. The record clearly shows that whatever conversation there was took place at the home of the Justice of the Peace when court was not in session. It did not amount to an offer to plead guilty. It either was or was not an admission. That, together with its voluntariness, was a question for *564 the trier of the facts (see Code Crim. Pro., § 395). Any other person could have testified on that point. It was not incompetent for the Justice to do so.
A State like New York, which has subscribed to the doctrine that illegally obtained evidence may be used against a defendant (cf. People v. Defore, 242 N. Y. 13), can hardly be expected to have a public policy against the testimony of a Justice of the Peace in a case of this kind.
Certainly since the onset of cor am nobis cases, judges and justices have been frequently called upon to testify as to some aspects of proceedings previously had before them.
Law as well as logic sustains the propriety of allowing Justice Hexby to testify here.
Lastly the defendant contends that section 1221 of the Penal Law is unconstitutional, it being argued that the word ‘ ‘ intoxicated ” is nowhere defined by statute and that the term is so vague, indefinite and uncertain that the statute fails to prescribe an ascertainable standard of guilt and hence is a violation of due process. It is contended that this statute fails to make known to a person what conduct on his part will render him liable to its penalties and that men of common intelligence must necessarily guess at its meaning and differ as to its application. (See Connally v. General Constr. Co., 269 U. S. 385; United States v. Cohen Grocery Co., 255 U. S. 81; 16A C. J. S., Constitutional Law, § 580.)
It would seem that if this statute is in fact unconstitutional, some of our higher courts would have found it to be so, perhaps when consideration was being given to the problems raised in such cases as People v. Murphy (288 N. Y. 613, supra); People v. Reson (249 App. Div. 54, supra); Matter of Radigan v. O’Connell (304 N. Y. 396, supra) or in People v. Weaver (188 App. Div. 395, supra). It might be argued with more force that the problem of constitutionality of section 1221 of the Penal Law might well have been considered more recently in People v. Hook (3 N Y 2d 485).
Research does not, however, disclose any previous New York case in which constitutional objection for vagueness has been made to section 1221. The question must therefore be considered as novel in New York.
Legislation should not be declared to be unconstitutional unless it clearly appears to be so and all doubt should be resolved in favor of its constitutionality. (People ex rel. Seagrist v. Mederer, 33 N. Y. S. 2d 114; Johnson v. City of New York, 274 N. Y. 411.)
*565 It may be argued that this statute has been on the books for years. Courts have heard many eases arising under it. Precedents have been established. Yet the length of time a statute has been in force is not, standing alone, the test of constitutionality. (Winters v. People, 333 U. S. 507.)
It is of course, the statute and not the accusation under it that prescribes the rule to govern conduct and warns against aggression. (Lanzetta v. New Jersey, 306 U. S. 451; United States v. De Cadena, 105 F. Supp. 202.)
The test in matters of this land as to whether or not a statute may be upheld as constitutional seems to be whether the phrases used have a technical or other specific meaning or a well-settled common-law meaning or whether the text of the statute involved of the subject with which it dealt sets up some sort of standard. (Connally v. General Constr. Co., 269 U. S. 385, 391, supra.) Such a statute should offer some comprehensive guide or rule. (People v. Grogan, 260 N. Y. 138.) It should clearly indicate what it is a man’s duty to avoid. (United States v. Brewer, 139 U. S. 278.) It must be so “ ‘ clear and positive ’ ” as to give “ 1 unequivocal warning ’ ” to citizens of the rule to be obeyed. (People v. Firth, 3 N Y 2d 472, 474.) It may not be so vague as to reach many harmless and stupid foibles. (People v. O’Gorman, 274 N. Y. 284.) A person should be able to know in advance whether his act is criminal or not. (Tozer v. United States, 52 F. 917.)
There are of course many cases in which a phrase in a criminal statute has been held to be sufficiently certain, notwithstanding an element of degree in the definition as to which estimates might differ. (People v. Gardner, 255 App. Div. 683; People v. Pieri, 269 N. Y. 315.) Some rules of conduct must necessarily be expressed in general terms. (Miller v. Strahl, 239 U. S. 426; see, also, Nash v. United States, 229 U. S. 373.)
The statute may be constitutional although it draws a * ‘ wide circle of prohibited conduct ”. (Winters v. People, 333 U. S. 507, 525, supra.)
In some of such cases the courts have resorted to prior judicial construction to determine the legal meaning of the phrase involved and having done so, have held the statute as so interpreted to be constitutional. (See, e.g., People v. Gardner, supra; Fox v. Washington, 236 U. S. 273; Jordan v. De George, 341 U. S. 223.)
An argument for constitutionality is found in a situation where the phrase in question has been used in another statute which has been found to be constitutional. Here it may be said to have become a criterion. (Cf. Jordan v. De George, supra.) *566 In this connection we must remember that the statute making driving while intoxicated a crime (Vehicle and Traffic Law, §70, subd. 5) has been held constitutional. (People ex rel. Seagrist v. Mederer, 33 N. Y. S. 2d 114, supra; People v. Koch, 250 App. Div. 623.)
We now come to the legal meaning of the word “ intoxicated ”.
Alcoholic beverages when taken into the stomach, pass into the blood stream. Once there, alcohol affects the nerve centers, including the brain. It seems to act first as a stimulant and later as a sedative.
Hence the taking of any alcohol into the human system thus has some intoxicating effect. Taken to excess, it may produce stupor, a condition of complete drunkenness. In extreme cases, it can cause death. Presumably what the statute means is that at some stage in this process, a person becomes legally intoxicated.
It is a matter of common knowledge that the word intoxication has different meanings to different people. There are many fine people who sincerely believe that drinking alcoholic beverages is morally wrong. There are others who take the view that no man is intoxicated unless and until he loses complete control of his faculties. Probably the majority of our citizens would draw the line somewhere between these two extremes.
It may even be that" what the people generally regard as intoxication may vary from one generation to another. It is to be suspected that the attitude toward intoxication is different now than it was during the Prohibition Era.
But we deal here with law and not with philosophy.
In the legal field, as distinguished from any other field, and as distinguished from common parlance, there is less divergence of opinion. Ballentine, for example, says (Ballentine’s Law Dictionary [2d ed.], “ intoxication ”): “ To some men it means being under the influence of an intoxicant to such an extent as to render one helpless; while others speak of a person as intoxicated when he is but slightly under such influence. The latter condition is not one of intoxication, which implies undue or abnormal excitation of the passions or feelings, or the impairment of the capacity to think and act correctly and efficiently, and suggests the loss of normal control of one’s faculties.” (See, also, 48 C. J. S., Intoxicate, pp. 121-122.)
As pointed out in People v. Schneider (362 Ill. 478, 485) with reference to driving a car while intoxicated, there will be found in the courts’ decisions in the various States, differences in *567 wording in defining “ intoxicated ”, but “ each of them in some way or other includes the central idea of such an impairment of the faculties as to diminish the ability to manage the vehicle and impair the faculties of care and caution on the part of the driver.”
Here we begin to see a standard of conduct. It remains to be determined whether such a standard has been established for New York. As previously indicated, such a standard can be found from prior judicial construction.
In Kenney v. Rhinelander (28 App. Div. 246, 250) the court held to be substantially correct a charge to a jury defining intoxicated condition as meaning that a man must be “in such a state as to be incapable of giving the attention to what he was doing, which a man of prudent and reasonable intelligence would give.”
In People v. Coppock (206 Misc. 89, 90) a person was stated to be under the influence of liquor when “ ‘ he has lost to any extent some of that clearness of intellect and self-control that he would otherwise possess.’ ”
In People v. Weaver (188 App. Div. 395, supra) the court held that the test of intoxication depends on the impairment of judgment or mental and physical faculties.
It is true that in the Weaver case, the court also said (p. 400): “ What is clearly intended by the use of the term in section 1221 is that a person shall not be in such a condition by reason of alcoholic beverage as to attract the attention of the public to himself.”
It might also be pointed out that in the very recent case of People v. Hook (3 N Y 2d 485, supra) the Court of Appeals, while dealing with the question of whether a public place was involved, has said (p. 488): “ Ordinarily it involves an intoxicated person whose presence is in some manner offensive to the public.”
It should be added too, that in People v. Lane (8 Misc 2d 325, 326) where the court was also considering whether a public place was involved, it was said that the statute was enacted to keep intoxicated persons from voluntarily going to public places “where they were likely to annoy, molest or disgust” others.
It is obvious that there cannot be two tests of intoxication — one of them based on impairment of faculties and the other based on the degree of public attention which may be attracted by the actions of a person intoxicated, or alternatively by the degree of offense to others.
The true rule must be based, not on the offense to others, nor on the attraction of public attention, for these in the final *568 analysis would make public intoxication something akin to disorderly conduct.
I think it might well be said too that the question of whether or not the public attention is attracted or whether or not the conduct is offensive is really the result of the condition and is not the condition itself.
The true rule, as derived from the New York cases, must therefore be taken to be that a man is intoxicated when there is an impairment of his capacity to think and act correctly and when he has lost, even in part, the control of his physical and mental faculties.
This view is strengthened when we reconsider the crime of driving while intoxicated. Here the test must be, as it is, whether the ability to control the vehicle has become impaired by voluntary intoxication; not as to whether the driver is offensive, creates a disturbance, attracts attention, or perhaps, just scares somebody.
It follows that I hold the statute to be constitutional. The judgment of conviction and sentence are both aErmed.
Submit order.