William G. Coleman, J.
The defendant was arrested on September 7, 1974 in the Town of Tonawanda, New York, and charged with driving while intoxicated, in violation of subdivision 3 of section 1192 of the Vehicle and Traffic Law. He was tried before the undersigned without a jury on January 7, 1975. At the conclusion of the trial the court reserved decision.
Prior to the commencement of the trial a Huntley hearing was held for the purpose of determining whether defendant’s oral statement that he was driving should be suppressed. It was clear from the evidence at that hearing that no Miranda warnings were given to the defendant prior to the time the admission was made. On this basis defendant’s attorney moved to suppress and we reserved decision.
Based upon the reasoning of the court in People v Alexander (57 Misc 2d 462), the motion to suppress is now denied. Where a police officer is investigating a traffic accident and asks general questions as to what occurred, Miranda warnings are not required, since the questioning has not reached the custodial stage. (See, also, 3 New York Criminal Practice, pp 20-36.)
Patrolman John Murphy arrived upon the scene of the accident in which the defendant was allegedly involved at approximately 4:00 a.m. on September 7, 1974. This was in response to a radio call he had received from headquarters. He found Mr. LaPlante at the wheel of a 1970 Buick automobile, in the extreme right-hand, northbound lane on Eggert Road, a four-lane highway, approximately 10 to 12 feet behind another car. Both of these automobiles were damaged, with the damage to defendant’s vehicle in the front and the damage to the other vehicle in the rear. At the time he appeared in court he could riot recall whether defendant’s engine was still running when he arrived on the scene or whether the keys were in the ignition. He did remember having had a conversation with the defendant who acknowledged that he had been driving the vehicle in which he was then seated behind the wheel.
At that time Officer Murphy noticed nothing unusual about the defendant’s condition. He asked him to get out of the car and asked for his license and registration, at which time defendant stumbled. The officer described the defendant’s condition as "very shaky, swaying and staggering. He appeared intoxicated and I placed him under arrest.” He also *36 referred to his speech as being "slurry, not normal”, and observed that his breath smelled of alcohol, that his clothes were in disarray, that his shirt was hanging out, and that he appeared very sloppy. He then read him his rights.
After placing defendant’s hands in cuffs behind his back, he put him in the rear seat of his police vehicle and took him to headquarters. He radioed ahead to have the breathalyzer warmed up.
After the defendant had been in the I. D. room for approximately 15 to 20 minutes, the breathalyzer test was administered by Lieutenant David Evans and a reading was taken which showed 0.21 of 1% alcohol in defendant’s blood. From the examination and cross-examination of the breathalyzer operator, I am satisfied that the test was properly administered.
After the close of People’s case, defendant’s attorney rested and moved to dismiss on the following grounds: (1) that defendant was not advised of his rights prior to the time of his arrest; (2) that there was no evidence of defendant’s having operated the motor vehicle in which he was found seated; (3) that there was no proof that defendant was under the influence of alcohol at the time of the accident; (4) that the information was insufficient as a matter of law; and (5) that the evidence given by the breathalyzer operator should have been stricken. The court reserved decision on all these motions. After a review of all the evidence the motions are now denied.
The principal question to be resolved at this time is essentially a simple one. Is there a difference under the law between driving while intoxicated and driving while impaired? The subject was discussed by this court approximately a year ago in People v Jones (77 Misc 2d 33). It involved a similar accident on the same highway. Since rendering that decision I have had occasion to speak to numerous attorneys, Judges, newspaper reporters, State legislators and laymen and I am now more convinced than ever that there is no legally defined difference between driving while impaired (Vehicle and Traffic Law, § 1192, subd 1) and driving while intoxicated (Vehicle and Traffic Law, § 1192, subd 3).
The source of the problem was the action of the New York State Legislature in 1960 in creating the new concept of driving while ability impaired. Prior to that time, in order to remove a drinking driver from the highway, the People were *37 required to prove that he was intoxicated. There was a presumption that he was intoxicated if he had .15 of 1% alcohol in his blood. Under the new law if the prosecutor could prove that a driver had .10 of 1% of alcohol in his blood, he was then presumed to be guilty of the traffic infraction of driving while impaired and his license could be suspended for 60 days. Neither the uniform vehicle code nor the laws of many other States try to follow the New York theory. They generally prohibit driving under the influence of alcohol.
I am not sure how many drinking drivers were removed from the road as a result of this new concept. I am very sure, however, that prosecutors continued to have trouble convicting drivers of the misdemeanor of driving while intoxicated. Recognizing this, the Legislature once more amended section 1192 of the Vehicle and Traffic Law in 1970 by eliminating the presumption of intoxication at .15 of 1% alcohol. Thereafter it was a misdemeanor for a driver to have that amount of alcohol in his blood, regardless of whether he was intoxicated. The statute was later amended to reduce the amount required to prove this misdemeanor to .12 of 1% and then to .10 of 1%.
At no time has the Legislature tried to define in words the difference between driving while intoxicated and driving while impaired. Its decision in 1970 to remove the "presumption of intoxication” created the problem we now face or made it more difficult to solve. Each Judge to whom I have spoken has his own version of the difference or admits he can’t define it.
. The leading case on the subject of driving while intoxicated is People v Weaver (188 App Div 395). In this case decided by the Third Department on June 30, 1919, the court stated in part (p 400): " 'Hence for the purposes of the statute under which defendant is convicted, he is intoxicated when he has imbibed enough liquor to render him incapable of giving that attention and care to the operation of his automobile that a man of prudence and reasonable intelligence would give’ * * * intoxication within the meaning of this statute means such a condition as impairs to some extent, however slight it may be, the ability of a person to operate an automobile. ” (Emphasis added.)
In People v Albin (NYLJ, May 8, 1964, p 20, col 5) the defendant was charged with the crime of driving while intoxicated. His attorney requested the court to charge the infraction of operating while ability impaired as an included offense of which the defendant might be found guilty by the jury. The *38 court refused to so charge. In reversing, the appellate court stated: "Both charges should have been submitted to the jury and the difference explained by the trial judge. His refusal to do so upon the request of the defendant constitutes reversible error.” In discussing the distinction, however, the court suggested that the difference between the offense of driving while impaired and the crime of driving while intoxicated is the degree to which the operator’s faculties were affected by his alcoholic consumption. This seems to beg the question rather than to clarify the point at which a person becomes intoxicated.
If there is no clearly defined difference between driving while intoxicated and driving while impaired, then the statute must be unconstitutional. "A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.” (Connally v General Constr. Co., 269 US 385, 391.)
In discussing the constitutionality of former section 1221 of the Penal Law (public intoxication) the court in People v Bevilacqua (12 Misc 2d 558, 565) stated as follows: "The test in matters of this kind as to whether or not a statute may be upheld as constitutional seems to be whether the phrases used have a technical or other specific meaning or a well-settled common-law meaning or whether the text of the statute involved of the subject with which it dealt sets up some sort of standard. (Connally v General Constr. Co., 269 US 385, 391, supra.) Such a statute should offer some comprehensive guide or rule. (People v Grogan, 260 NY 138.) It should clearly indicate what it is a man’s duty to avoid. (United States v Brewer, 139 US 278.) It must be so 'clear and positive’ as to give 'unequivocal warning’ to citizens of the rule to be obeyed. (People v Firth, 3 NY2d 472, 474.) * * * A person should be able to know in advance whether his act is criminal or not. (Tozer v United States, 52 F. 917.)”
Using the above-cited test, the court in Bevilacqua sought to establish the constitutionality of the "public intoxication” statute by finding some clear judicial definition of "intoxicated.” The court then concluded, after citing People v Weaver (188 App Div 395, supra), and other driving while intoxicated cases, that indeed a definition existed which delin *39 eated the proscribed conduct and saved the statute from constitutional infirmity (p 568):
"The true rule, as derived from the New York cases, must therefore be taken to be that a man is intoxicated when there is an impairment of his capacity to think and act correctly and when he has lost, even in part, the control of his physical and mental faculties.
"This view is strengthened when we consider the crime of driving while intoxicated. Here the test must be, as it is, whether the ability to control the vehicle has become impaired by voluntary intoxication”.
But if it was the "impaired” definition found in Weaver which kept the term "intoxication” safe from so-called vagueness attacks, then when the Legislature extracted "driving while impaired” from the "driving while intoxicated” statute, it removed at the same time the constricted definition which had preserved that statute’s constitutionality. (Cf. People v Gardner, 255 App Div 683.) It was then incumbent upon the Legislature to provide some ascertainable notion of what "intoxicated” was now to mean. As no such definition is incorporated in the statute today, the distinction between "intoxicated” and "impaired,” if any even exists, is far too uncertain and vague as to serve as an index of the boundary between an act which is a crime and one which is not.
We all know that it is not a crime in New York State to drink alcoholic beverages, nor is it a crime to drive after having had one or more drinks. As a matter of fact, it is not a crime to drive while one’s ability is impaired by the use of alcohol. By reading the reported cases and the Vehicle and Traffic Law, no one can be sure when a driver has passed from the stage of being impaired to the stage of being intoxicated. Accordingly, this statute will arbitrarily charge one drinking driver with a crime and another with an infraction for an apparently identical act. I therefore find subdivision 3 of section 1192 to be unconstitutionally vague and violative of the due process clause of the Fourteenth Amendment to the Federal Constitution.
For the reasons I previously stated in People v Jones (77 Misc 2d 33, supra), subdivision 2 of section 1192 of the Vehicle and Traffic Law is practically unenforceable, if not unconstitutional. In order to prove a violation of that section the People must show that the amount of alcohol in defendant’s blood exceeded .10 of 1% at the time he operated a vehicle. It is not *40 enough merely to show the amount in his blood at some later time.
We understand that the State Police now have a new machine called "alert” which may be able to be used on the spot of operation of a vehicle within moments after the operation by one allegedly intoxicated. Like the breathalyzer it measures the amount of alcohol in one’s blood from a breath sample. If found to be accurate, this could solve the problem of proof under subdivision 2 of section 1192.
It may also be possible to have a breathalyzer test taken as late as two hours after arrest, in accordance with the provisions of section 1194 of the Vehicle and Traffic Law, and then have an expert witness interpolate that result. A duly qualified person could conceivably convince a court or a jury how much alcohol was in a defendant’s blood at the time he was operating his vehicle based upon the amount measured in his blood at some later time.
No such proof was offered in the case of the defendant George LaPlante. For that reason I cannot find him guilty of violating subdivision 2 of section 1192.
Based upon the result of the breathalyzer test, observations made by Officer Murphy, and the presumption set forth in section 1195 of the Vehicle and Traffic Law, I must find the defendant guilty of driving while impaired, a traffic infraction. The matter is adjourned for sentence to March 18, 1975.