# STATE OF FLORIDA v OAKLEY

## Case No. 86-003873MMA-10

County Court, Broward County

May 5, 1988

### APPEARANCES OF COUNSEL

**Dennis Nicewander,** Assistant State Attorney for plaintiff.
**George T. Pallas** for defendant.

### OPINION OF THE COURT

SUSAN LEBOW, County Judge.

### *AMENDED ORDER*

THIS CAUSE came on to be heard upon the Defendant's Motion in

Limine, Sworn Motion to Dismiss and Motion to Exclude Evidence or Roadside Physical Sobriety Tests, the Court, having reviewed the court file, having heard argument of counsel and being otherwise fully advised in the premises, enters the following Order:

## I.

### FINDINGS OF FACT

On February 25, 1986, at 9:34 p.m., the Defendant, STEVEN OAKLEY, was stopped for exceeding the speed limit in the south-bound lane of Interstate 95 in Broward County, Florida. At the roadside and upon the request of the arresting officer, OAKLEY performed three (3) physical sobriety tests (one-leg stand, heel-to-toe and finger-to-nose). OAKLEY was then transported to a Broward Sheriff's Office DUI testing station where, on video, he refused to again perform the aforementioned physical tests. OAKLEY was not told that he was required by law to takes these tests or that his refusal to do so could be used against him in some way.

Also at the station and again upon the request of a law enforcement officer, OAKLEY submitted to two (2) chemical breath tests. The tests, administered at 11:20 and 11:23 p.m. or approximately one hour and forty-five minutes after OAKLEY was last behind the wheel, resulted in blood alcohol levels (BAL) of 0.14%. No state witness is able to perform retrograde extrapolation to determine what OAKLEY's blood alcohol level was at the time he was driving, or in actual physical control, of his vehicle or, indeed, whether his blood alcohol level was in excess of 0.10% at that time.

Thereafter, the State filed an Information, captioned "Driving Under the Influence," which alleged that OAKLEY drove, or was in actual physical control of, a vehicle while he was under the influence of an alcoholic beverage to the extent that his normal faculties were impaired, or with a blood alcohol level of 0.10% or above, contrary to § 316.193(1), *Fla. Stat.* (1985). The State, at trial, intends to offer the 0.14% readings as proof of the element of impairment in § 316.193(1)(a) pursuant to the presumption of impairment contained § 316.1934(2)(c), *Fla. Stat.* (1985). Moreover, the State intends to use the readings to prove the element of blood alcohol level of 0.10% or above contained in § 316.193(1)(b).

## II.

### CONCLUSIONS OF LAW

#### A.

Concerning OAKLEY's refusal to perform physical sobriety tests on

video, the Court grants his Motion to Exclude. The Court finds that the instant case is indistinct from, and therefore controlled by, *Herring v. State,* 501 So.2d 19 (Fla. 3d DCA 1987). In that case, the defendant was asked to submit to a "hand swab test for gunshot residue." There, as here, the Defendant was not told that he was required by law to take this test or that his refusal to do so could be used against him in some way. The Court ruled that testimony of the defendant's refusal to "have his hands swabbed" was inadmissible.

Accordingly, this Court holds that any testimony and that portion of the video evidencing OAKLEY's refusal to perform physical sobriety tests at the station is likewise inadmissible.

### B.

OAKLEY has filed a Sworn Motion to Dismiss alleging that since no evidence will be presented establishing a blood alcohol level of 0.10% or higher at the time of driving that therefore the unlawful blood alcohol component of the offense should be dismissed. Simiarly, OAKLEY has filed a Motion in Limine arguing that since the 0.14% readings cannot be extrapolated back to the time of OAKLEY's driving, they are therefore not a reliable measure of his BAL at that time and that therefore the numerical values should not be admitted, particularly in light of the presumptions of impairment contained in § 316.1934 *Fla. Stat.* (1985). The court agrees.

The offense of Driving with an Unlawful Blood Alcohol Level (DUBAL) *contained in* § 316.193(1)(b), *Fla. Stat.* requires that the Defendant has a blood alcohol level of 0.10% or higher *at the time* he was driving, or in actual physical control of, a vehicle and *not* at any subsequent time. In fact, The Standard Jury Instructions in Misdemeanor Cases (1981) describes the offense as follows:

DRIVING WITH AN UNLAWFUL BLOOD ALCOHOL LEVEL F.S. 316.193(2)

Before you can find the defendant guilty of Driving With an Unlawful Blood Alcohol Level, the State must prove the following two elements:

(1) (Defendant) drove or was in actual physical control of a vehicle in Florida.

(2) He had a blood alcohol level of 0.10% or above *at that time.* (emphasis added).

Similarly, the presumptions of impairment contained in § 316.1934,

*Fla. Stat.* give rise to a presumption that the Defendant was impaired *at the time* he was driving, or in actual physical control of, a vehicle and *not* at any subsequent time.

Section 316.1934(2)(c), *Florida Statutes* (1983) provides as follows:

(2) Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving, or in actual physical control of, a vehicle while under the influence of alcoholic beverages or controlled substances, when affected to the extent that his normal faculties were impaired or to the extent that he was deprived of full possession of his normal faculties, the results of any test administered in accordance with § 316.1932 or § 316.1933 and this section shall be admissible into evidence when otherwise admissible, and the amount of alcohol in the person's blood *at the time alleged,* as shown by chemical analysis of the person's blood or breath, shall give rise to the following presumptions:

\* \* \*

(c) If there was *at that time* 0.10 percent or more by weight of alcohol in the person's blood, that fact shall be prima facie evidence that the person was under the influence of alcoholic beverages to the extent that his normal faculties impaired. Moreover, such person who has a blood alcohol level of 0.10 percent or above is guilty of driving, or being in actual physical control of, a motor vehicle, with an unlawful blood alcohol level.. (emphasis supplied).

Since no evidence can be presented to establish that OAKLEY's blood alcohol level was .10% or higher at the time of operation of his vehicle, a blood alcohol level at some subsequent time has no relevance. *See State v. Dacey,* 418 A.2d 856 (Vt. 1980) (expert testimony relating the blood-alcohol test result back to the time of operation is an essential predicate for instruction on statutory presumption of impairment). Without relation back testimony, the jury will erroneously use a numerical test result, which has not been related back to the time of the offense, as prima facie evidence of a blood alcohol level of 0.10% or higher at the time of driving. *See State v. Dumont,* 499 A.2d 787 (Vt. 1985) ("In view of the . . . danger of its misuse by the jury . . . the numerical result itself should be excluded unless it is related back to the time of operation"); *See also Commonwealth v. Hartman,* 119 A.2d 211 (1956) (affirmance of order granting new trial based upon expert testimony establishing that results of intoximeter taken one hour after driving not indicative of defendant's condition at time of driving); *People v. LaPlate,* 365 N.Y.S.2d 392, 397 (N.Y. 1975) (prosecution

100

"must show that the amount of alcohol in defendant's blood exceed .10 of one per centum *at the time he operated a vehicle.* It is not enough merely to show the amount in his blood at some later time") (emphasis in original). Indeed, *if the instant readings were admitted, it would be left to guess and speculation as to OAKLEY's blood alcohol level at the time of the alleged offense,* the 0.14% numerical results serving to only grossly mislead the jury.

It is therefore the ruling of this Court that OAKLEY's Sworn Motion to Dismiss is GRANTED and that portion of the Information alleging that the Defendant drove with an Unlawful Blood Alcohol Level is stricken.

Likewise, OAKLEY's Motion in Limine is GRANTED and the State is precluded from introducing into evidence the 0.14% numerical result. However, the State is free to introduce into evidence that alcohol was present in the Defendant's system.

### ISSUES CERTIFIED

Pursuant to Rule 9.160, Florida Rules of Appellate Procedure, I hereby certify that the following issues are of great public importance:

#### I.

WHETHER PROOF OF THE OFFENSE UNDER § 316.193(1)(b) OF DRIVING OR BEING IN ACTUAL PHYSICAL CONTROL OF A VEHICLE WITH A BLOOD ALCOHOL LEVEL OF 0.10% OR HIGHER REQUIRES THE PROSECUTION TO PRODUCE EVIDENCE OF THE DRIVER'S BLOOD ALCOHOL LEVEL AT THE TIME OF DRIVING OR ACTUAL PHYSICAL CONTROL OR WHETHER IT IS SUFFICIENT AND CONSISTENT WITH THE STATE'S BURDEN OF PROVING EVERY ELEMENT OF THE OFFENSE BEYOND A REASONABLE DOUBT THAT THE STATE MERELY SHOW THE AMOUNT OF ALCOHOL IN THE DEFENDANT'S BLOOD AT SOME LATER TIME?

#### II.

WHETHER THE STATE IS ENTITLED TO RELY ON THE 0.10% STATUTORY PRESUMPTION OF IMPAIRMENT CONTAINED IN § 316.1934(2)(c) TO PROVE THE IMPAIRMENT ELEMENT OF A DUI OFFENSE WHERE IT CANNOT BE ESTABLISHED THAT THE DEFENDANT HAD A 0.10% BLOOD ALCOHOL LEVEL AT THE TIME ALLEGED, ONLY THAT HE HAD SUCH A LEVEL AT SOME SUBSEQUENT TIME?

DONE AND ORDERED this 5th day of May, 1988, in Fort Lauderdale, Broward County, Florida.